## In re ESTATE OF Robert A. HOOPER, Deceased.

## Appeal of Dean R. Hooper, Jr., Linda Hooper and Ronald Hooper.

Superior Court of Pennsylvania.

Argued June 25, 2013.
Filed Nov. 20, 2013.

---

Stephen D. Wicks, Altoona, for appellants.

Neil Hendershot, Harrisburg, for Gladys Hooper, participating party.

BEFORE: SHOGAN, J., LAZARUS, J., and MUSMANNO, J.

OPINION BY LAZARUS, J.

Dean R. Hooper, Jr., Linda Hooper, and Ronald Hooper (collectively, "Putative Heirs") appeal from the order entered in the Court of Common Pleas of Blair County, Orphans' Court Division, granting summary judgment in favor of Appellee Gladys D. Hooper ("Gladys") and concluding that, as a matter of law, the sole beneficiary of the Estate of Robert A. Hooper, Deceased ("Robert's Estate"), is the Estate of Vincent C. Hooper, Deceased ("Vincent's Estate"). We affirm.

This Court has previously set forth the relevant familial and procedural history in this case as follows:

> Dean Hooper, Sr. ("Dean Sr.") and [Grace] were married in 1923. Grace had two children during the marriage, [Vincent], born in 1923 or 1924, and [Robert], born in 1926. Robert's birth certificate listed Dean Sr. as his father. Dean Sr. and Grace separated in 1930 and eventually divorced in 1940. Dean Sr. then married Gertrude Resig. The couple had a son, Dean, and adopted two children, Ronald and Linda.

> On July 11, 2003, Robert died intestate. On July 31, 2003, the co-Administrators of the [e]state filed a [p]etition for probate and grant of letters listing Vincent and Dean as the heirs of the Estate. Vincent died on April 6, 2004, and his surviving widow, Gladys, was the sole beneficiary of [his] estate. On July 27, 2004, the co-[a]dministrators of the [e]state filed a [p]etition wherein they asserted that Robert's only intestate heir was Vincent. The co-[a]dministrators indicated that they had ordered a DNA test to determine the paternity of Robert. The results of the DNA test demonstrated that Robert was not the natural son of Dean Sr. Therefore, Vincent and Robert were half-brothers and Dean was not a lawful heir to [Robert's] [e]state.

> In response, Dean, Ronald, and Linda filed objections to this proposal, arguing that they were entitled to a share of the [e]state because Dean Sr. should be considered Robert's father under the presumption of paternity doctrine.

. . .

On January 7, 2005, the Orphans' Court issued an Order holding that the presumption of paternity doctrine applied [and] could only be rebutted by a showing of non-access or impotence. Gladys filed an omnibus [m]otion, requesting that the Orphans' Court reconsider the January 7, 2005 Order. The Orphans' Court held a conference wherein it determined that it would allow testimony by DNA experts and scheduled a hearing for June 16, 2005.

At the hearing, Gladys introduced two DNA experts who testified that Dean Sr. was not Robert's father. Dean, Ronald, and Linda presented no countervailing evidence at the hearing. Instead, they relied upon the Orphans' Court's January 7, 2005 Order indicating that the presumption of paternity applied. On February 26, 2006, the Orphans' Court issued an Order reaffirming its January 7, 2005 Order. The [e]state filed a [p]etition seeking permission to appeal this Order to the Superior Court of Pennsylvania. This [p]etition was denied by the Superior Court on May 3, 2006.

Following this Court's denial of the [p]etition to pursue an appeal, the Orphans' Court ordered the co-[a]dministrators of the [e]state to file a revised accounting of the [e]state. The co-administrators filed the accounting and again determined that Vincent's estate was the sole heir of the [e]state. All of the relevant parties filed objections to the accounting. The Orphans' Court held a two-day hearing on the objections. Thereafter, the Orphans' Court entered an Order on January 16, 2008, wherein it held that the presumption of paternity doctrine applied in this case and that the [e]state should be equally divided between Dean, Ronald, Linda and Gladys. The Orphans' Court then certified this Order as final and appealable. Gladys filed a timely [n]otice of appeal.

*Estate of Hooper*, 595 WDA 2008, at 1–3, 981 A.2d 942 (Pa.Super. filed July 23, 2009) (unpublished memorandum).

On appeal, Gladys argued that the presumption of paternity doctrine was inapplicable because "the main policy behind the presumption, the preservation of a marriage, is not present in this case." *Id.* at 5. *See Brinkley v. King*, 549 Pa. 241, 701 A.2d 176 (1997) (holding that presumption of paternity applies only in cases where policies underlying presumption would be advanced by its application). This Court agreed, vacated the order of the Orphans' Court and, citing *Strauser v. Stahr*, 556 Pa. 83, 726 A.2d 1052 (1999),[1] remanded with instructions to the Orphans' Court to hold a "hearing to determine whether paternity by estoppel applies." *Hooper, supra,* at 9.

The record was remitted to the Orphans' Court on September 27, 2010. Before the court could schedule a hearing as directed by this Court, Gladys filed a motion for summary judgment on April 27, 2012, in which she argued, in relevant part, that the doctrine of paternity by estoppel was inapplicable in this case.

The Orphans' Court finally convened a hearing on May 29, 2012, at which time it heard oral argument on the estoppel issue

---

1. In *Strauser,* the Supreme Court summarized the analysis required for a legal determination of the paternity of a child conceived or born during a marriage as follows:

[F]irst, one considers whether the presumption of paternity applies to [the] particular case. If it does, one then considers whether the presumption has been rebutted. Second, if the presumption has been rebutted or is inapplicable, **one then questions whether estoppel applies.**

*Strauser,* 726 A.2d at 1055 (emphasis added).

but took no evidence. Thereafter, the court granted Gladys' motion for summary judgment. This timely appeal follows, in which Putative Heirs raise the following issues for our consideration: [2]

1. Whether the [Orphans' Court] erred as a matter of law or abused its discretion in granting summary judgment on [Putative Heirs'] claims to be heirs of the Estate of Robert Hooper?

2. Whether the [Orphans' Court] erred as a matter of law or abused its discretion by failing to grant an evidentiary hearing on the application of paternity by estoppel as ordered by the Superior Court and two judges in the [Orphans' Court]?

Brief of Appellants, at 4.

We begin by noting that our standard of review of a decree of the Orphans' Court is deferential. *Estate of Harrison*, 745 A.2d 676, 678 (Pa.Super.2000).

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*Estate of Pendergrass*, 26 A.3d 1151, 1153 (Pa.Super.2011) (internal citations and quotation marks omitted).

In addition, our standard of review of the grant of summary judgment is well-settled:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Michael Salove Co. v. Enrico Partners, L.P.*, 23 A.3d 1066, 1069 (Pa.Super.2011) (citation omitted).

Here, Putative Heirs assert a claim that the Orphans' Court's reliance on *Bahl v. Lambert Farms*, 572 Pa. 675, 819 A.2d 534 (2003), was misplaced because the Supreme Court limited its holding in *Bahl* to the specific facts of the case. Moreover, Putative Heirs assert that the Orphans' Court violated the law of the case doctrine

---

2. We have renumbered Appellants' issues for ease of disposition.

by failing to comply with this Court's order to conduct an evidentiary hearing. For the reasons that follow, we disagree.

■ The doctrine of paternity by estoppel "embodies a legal determination that one may be deemed a parent based on his holding himself out as such." *K.E.M. v. P.C.S.*, 614 Pa. 508, 38 A.3d 798, 801 (2012). The doctrine is grounded in the public policy that children should be secure in knowing who their parents are, and is designed to protect the best interests of minor children. *Bahl*, 819 A.2d at 539. Consistent with that policy rationale, paternity by estoppel has only been applied in matters involving the support of minor children. *Id.*

That limited application notwithstanding, here, Putative Heirs argue that *Bahl* is factually distinguishable and should not be invoked to bar application of the doctrine in this matter. In *Bahl*, Zita Bahl, aged seventeen, gave birth to a child out-of-wedlock. Zita's parents, William Bahl, Sr. and his wife, Rose, took the child in, named him "William, Jr.," and raised him as their own. Baptismal and school records reflected that he was the Bahls' child, and obituaries were published listing him as a sibling of the couple's other children. After the Bahls' deaths, title to their farm passed to their children and grandchildren by intestate succession. Years later, Lambert Farms, Inc., purchased the farm from the couple's heirs; however, neither William, Jr., nor his heirs were named as grantors on the deed. Thereafter, William, Jr.'s heirs brought an action in partition, claiming entitlement to a one-sixth share of the farm.

After a nonjury trial on stipulated facts, the trial court determined that William,

Jr.'s heirs had failed to prove that he was the natural child of William, Sr., and Rose. On appeal, this Court, applying the doctrine of paternity by estoppel, reversed, concluding that William, Jr.'s heirs were entitled to a one-sixth share of the farm.

On appeal, the Supreme Court disagreed. Emphasizing the public policy rationales underpinning the doctrine, which were specifically concerned with the protection of the rights of minor children and applied theretofore only in the support context, the Court declined to extend application of the doctrine to the realm of intestate succession. Moreover, the Court noted that "although we have stated that both a man who holds himself out as the child's father and the mother who accepts the man as the father will be estopped from denying the man's paternity, we have never extended the doctrine to estop third parties from challenging paternity." *Bahl*, 819 A.2d at 540 (citation omitted).

Upon review, we conclude that the facts of the matter *sub judice* are not materially distinguishable from those in *Bahl* such as would justify departure from its precedent. Accordingly, we find *Bahl's* holding dispositive. Here, as in *Bahl*, the parties are all adults seeking a share of a decedent's estate, not minor children in need of support. Also like *Bahl*, third parties, rather than a mother or father, are invoking the doctrine. Finally, applying paternity by estoppel to the facts of this case would do nothing to further the public policy that "children should be secure in knowing who their parents are." [3] *Id.* at 539. Accordingly, we conclude that the Orphans' Court properly granted summary judgment pursuant to *Bahl*.

Putative Heirs' claim that the Orphans' Court violated the law of the case doctrine

---

3. In fact, the record in this matter indicates that Robert was aware, from a young age, that Dean was not, in fact, his father. *See* Dean Hooper, Jr., Deposition, 1/4/05, at 56–58.

in failing to take evidence is similarly meritless. After hearing argument from both sides, the Orphans' Court correctly determined that paternity by estoppel was, as a matter of law, inapplicable to this matter. In light of that finding, an evidentiary hearing would have been a waste of time, money and judicial resources.[4]

Order affirmed.

4. In any event, we note that our prior memorandum decision in this matter did not specifically direct the Orphans' Court to take evidence in the matter, but rather simply to "determine whether paternity by estoppel applies." *Estate of Hooper*, 595 WDA 2008, at 9.