**ESTATE OF Cynthia Ann FULLER, Late of Fawn Township, York County, Pennsylvania.**

**Appeal of Shirley J. Whitmore.**

Superior Court of Pennsylvania.

Argued Oct. 23, 2013.
Filed March 3, 2014.

---

Donald B. Hoyt, York, for appellant.

Michael E. Rowan, Towson, MD, for appellee.

BEFORE: BENDER, P.J., WECHT, and FITZGERALD,* JJ.

OPINION BY FITZGERALD, J.:

Appellant, Shirley J. Whitmore, personal representative of the Estate of Cynthia Ann Fuller, deceased ("Decedent"), appeals from the March 3, 2013 order denying her exceptions to the Orphans' Court's January 9, 2013 order. Appellant claims that the Orphans' Court erred in its application of 20 Pa.C.S. § 2106(b) when it concluded that Appellee, Paul S. Fuller, did not (1) fail to support or (2) desert Decedent, his daughter, in the year prior to her death so as to forfeit his interest in her estate. We hold that when determining whether a parent has deserted a dependent or minor child under 20 Pa.C.S. § 2106(b), the court is not precluded from considering whether a parent has acted willfully and with the intention to permanently abandon a dependent or minor child. Accordingly, we affirm.

Appellant and Appellee are the divorced parents of Decedent. Decedent was killed in an automobile accident on September 3, 2007. Decedent was seventeen years old at the time of her death and died intestate. Following Decedent's death, Appellant sought appointment as the administrator of Decedent's estate. Appellee contested the appointment and a hearing was held on that matter on March 8, 2008. Ultimately, on March 12, 2008, the Register of Wills granted letters of administration to Appellant.

Appellant, as the personal representative of Decedent's estate, then filed suit against the parties responsible for the acci-

dent. On July 18, 2012, the estate settled with each of those parties.

On August 9, 2013, Appellant filed a petition to declare Appellee's intestate share of Decedent's estate forfeit under 20 Pa.C.S. § 2106(b). The petition alleged that for at least one year prior to Decedent's death, Appellant had deserted Decedent. Appellee filed an answer opposing the forfeiture petition. The Orphans' Court held a hearing on Appellant's petition following which it issued an order on January 10, 2013, denying the petition. Appellant timely filed exceptions and the Orphans' Court held oral argument on Appellant's exceptions on March 5, 2013. The court dismissed Appellant's exceptions in an order entered on March 8, 2013, and this timely appeal followed. Both the court and Appellant complied with Pa. R.A.P. 1925.

On appeal, Appellant presents one issue with six sub-parts:

Was the Orphans' Court holding that the criteria for forfeiture under 20 Pa. C.S. § 2106(b) were not met contrary to law, contrary to the evidence and an abuse of discretion when

The statute was revised in 2000 and the [Orphans'] [C]ourt interpreted the previous (1984) version;

The [Orphans'] [C]ourt followed *In re: Estate of Teaschenko* [393 Pa.Super. 355], 574 A.2d 649 (Pa.Super.1990) which was a failure to support case, and was effectively overruled by the legislature in 2000;

The [Orphans'] [C]ourt interpreted the concept of permanency into what the legislature meant by desertion;

The [Orphans'] [C]ourt blamed [Appellant's] obstruction and [D]ecedent

* Former Justice specially assigned to the Superior Court.

for [Decedent's] "stubborn refusal to see her father," when the burden was on [Appellee] to maintain a relationship with his daughter;

The [Orphans'] [C]ourt failed to recognize [Appellee's] admission that he had no contact with his daughter for over a year prior to her death; and The Court ignored [ ] Decedent's wishes under *In re: Kistner*, 856 [858] A.2d 1226 (Pa.Super.2004).

Appellant's Brief at 4.

Appellant's issue on appeal challenges the Orphans' Court's interpretation of Section 2106(b). Specifically, Appellant alleges that in concluding that Appellee did not forfeit his share of Decedent's estate, the Orphans' Court erred by considering whether Appellee willfully acted to abandon Decedent and whether he intended the abandonment to be permanent.

 This Court recently reaffirmed our standard of review of an Orphans' Court decree:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably

wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Hooper*, 80 A.3d 815, 818 (Pa.Super.2013).

 When the Orphans' Court arrives at a legal conclusion based on statutory interpretation, our standard of review is *de novo* and our scope of review is plenary. *Brown v. Levy*, —— Pa. ——, 73 A.3d 514, 517 (2013).

Section 2106(b) provides, in relevant part, that

**(b) Parent's share.**—Any parent who, for one year or upwards previous to the death of the parent's minor or dependent child, has:

(1) failed to perform the duty to support the child or who, for one year, has deserted the minor or dependent child

\*　　\*　　\*

shall have no right or interest under this chapter in the real or personal estate of the minor or dependent child. The determination under paragraph (1) shall be made by the court after considering the quality, nature and extent of the parent's contact with the child and the physical, emotional and financial support provided to the child.

20 Pa.C.S. § 2106(b).[1, 2]

The Pennsylvania Supreme Court recently stated

[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be con-

---

1. 20 Pa.C.S. § 2106(b) was amended on December 20, 2000, and made effective on February 18, 2001.

2. Prior to its amendment, Section 2016(b) provided that, "[a]ny parent who, for one year or upwards previous to the death of the parent's minor or dependent child, has *willfully*

neglected or failed to perform any duty of support owed to the minor or dependent child or who, for one year, has *willfully* deserted the minor or dependent child shall have no right or interest under this chapter in the real or personal estate of the minor or dependent child." (emphases added).

strued, if possible, to give effect to all its provisions. When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent. To determine the meaning of a statute, a court must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words.

Kirsch v. Pub. Sch. Emps.' Ret. Bd., 603 Pa. 439, 444, 985 A.2d 671, 674 (Pa.2009) (citations and quotation marks omitted).

■ Generally, the words of a statute are construed according to their common and approved usage. See Tooey v. AK Steel Corp., —— Pa. ——, 81 A.3d 851, 858 (2013); see also 1 Pa.C.S. § 1903. Furthermore, "[w]e have generally used dictionaries as source material for determining the common and approved usage of a term." Fogle v. Malvern Courts, Inc., 554 Pa. 633, 637, 722 A.2d 680, 682 (1999).

■ The definition of "desertion" is "the intentional and substantial abandonment permanently or for a period of time stated by law without legal excuse and without consent of one's duties arising out of a status (as that of husband and wife or parent and child)." Webster's Third New International Dictionary 611 (1971). "Desertion" is also defined as "the willful and unjustified abandonment of a person's duties or obligations, esp. to military service or to a spouse or family." Black's Law Dictionary 478 (8th ed. 2004). By definition, we hold that desertion in the context of Section 2106 is a parent's intentional and willful abandonment of a minor or dependent child.

■ Implied in Appellant's argument that the Orphans' Court misinterpreted Section 2106(b) is a contention that this Court should impute significance into the legislature's removal of the word "willful" from the prior version of the statute. However, given our standard of review, in order for this Court to look outside the plain language of the statute, Appellant must argue, and we must conclude, that the language of the statute is ambiguous. See Kirsch, 603 Pa. at 444, 985 A.2d at 674. Appellant proffered no such argument. Because Appellant has not claimed that the statutory language is ambiguous and, as set forth above, we perceive no ambiguity, we need not delve into the legislative history or prior statutory version to discern the intended impact of the legislature's amendment. See id.

Having concluded Section 2106(b) includes references the actor's intent to willfully abandon, we now examine whether the Orphans' Court abused its discretion by concluding that Appellee's conduct in the year before Decedent's death did not constitute desertion. In so doing, we defer to the factual findings and credibility determinations made by the orphans' court, so long as they are supported by the record. See Hooper, 80 A.3d at 818; In re Estate of Harrison, 745 A.2d 676, 678 (Pa.Super.2000).

With respect to the evidence of Appellee's intention to support and maintain a relationship with Decedent, the Orphans' Court stated the following:

[T]he Court heard testimony of [Appellee], which it finds credible, who indicated that he had no intention of causing a permanent separation between himself and Decedent. [Appellee] testified, similarly to several other witnesses, that he had regular visitation with Decedent and maintained a regular relationship with her up until she entered high school. [Appellee] explained that he, [his wife] and Decedent would go on vacations together, went boating, and did other activities together. He stated that around

2005 he began receiving calls on Fridays from [Appellant] explaining that Decedent did not want to visit that weekend, because she had plans with her friends. [Appellee] mentioned that in 2005 he was told several times by [Appellant] not to visit, because Decedent did not want to see him. He claims [Appellant] also threatened to have him arrested if he tried to visit Decedent. [Appellee] said that he attempted to visit Decedent a few times in 2005, but that when he would arrive at [Appellant's] home around 6:00 P.M., no one would be home and his calls would go unanswered. [Appellee] testified that enforcing visitation was a constant battle with [Appellant], and that he hoped to re-establish contact with Decedent after she left [Appellant's] home. He testified that he instituted the action to enforce his visitation rights in the hope that Decedent would see him, but that ultimately his attorney advised him that it would be difficult to physically make his teenage daughter come with him on visits. [Appellee] reiterated throughout his testimony that he did not understand Decedent's reluctance to speak with him or see him, and that he did not intend to desert her by not forcing her to come with him on visits.

In light of the testimony of [Appellee] and his witnesses, the Court finds that he did not manifest an intent to permanently abandon or separate himself from his minor child, Decedent, but rather, he was hopeful of a reconciliation and the resumption of conduct.

Trial Ct. Op. at 15–16. Furthermore, the trial court opined, with respect to the testimony and evidence put forth by Appellant:

[T]he Court did not find her to be a credible witness. [Appellant] is clearly a mother struggling with her grief over her daughter's death, and this seems to negatively impact her recollection of past events involving Decedent and [Appellee]. Throughout her testimony, [Appellant] did not appear to give [Appellee] any credit for parenting at all, despite the fact that for the first fifteen years of her life [Appellee] spent every weekend with her. The Court found that [Appellant's] credibility was also diminished in light of the content of some of her own exhibits.

[T]he correspondence included in [Appellant's] exhibits leaves the Court with the impression that [Appellant] was in fact an obstacle to [Appellee's] relationship with Decedent. [Appellant] was requested to have Decedent available for one hour on two different dates in order to re-establish contact with [Appellee] and it appears that she made no effort to comply with this request. Even as late as July 16, 2007, [Appellee] was corresponding with [Appellant] regarding the health of Decedent, and his performance of his parental duties.

In light of the evidence produced by [Appellant] herself, the Court finds it disingenuous when she claims that [Appellee] had no interest in Decedent, and intended to permanently abandon her. An individual who intends to permanently separate himself from his child does not incur legal fees and expenses to enforce his visitation rights, or continues to write letters regarding the medical services necessary for the child's health and welfare. Although the physical contact between [Appellee] and Decedent was essentially non-existent during the last year of her life, the absence of contact was the result of Decedent's stubborn refusal to see her father, as opposed to a purposeful action by [Appellee] to abandon his relationship with his minor child.

*Id.* at 10, 12–13.

. ▉ The record evidence amply supports the Orphans' Court's factual findings

set forth above, and, consequently, we discern no abuse of discretion in the court's credibility determinations. *See Harrison,* 745 A.2d at 678. In light of the facts as determined by the Orphans' Court, we conclude the "quality, nature, and extent of [Appellee's] conduct with [Decedent] and the physical, emotional and financial support provided to [Decedent], indicate Appellee did not desert Decedent." *See Brown,* 73 A.3d at 517; *see also* 20 Pa.C.S. § 2106(b).

■ Furthermore, we agree with the Orphans' Court that Appellant's claim that Decedent wished Appellant to be her sole heir was mere speculation and unsupported by the record. Consequently, we hold the Orphans' Court did not err in declining to consider Decedent's wishes. *See In re Kistner,* 858 A.2d 1226, 1228–29 (Pa.Super.2004). We similarly agree with the Orphans' Court that Appellee's alleged admission—that he had no contact with Decedent for over a year prior to her death—was unsupported by the record. *See Hooper,* 80 A.3d at 818. Accordingly, Appellant's issue does not merit relief.[3]

Order affirmed.

**3.** To the extent Appellant challenges the Orphans' Court's reliance on *Teaschenko,* we note that "it is a well settled doctrine in this Commonwealth that a trial court can be affirmed on any valid basis." *See In re T.P.,* 78 A.3d 1166, 1170 (Pa.Super.2013).