J-A25002-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| RAQUEL D. STEVENSON, ADMINISTRATRIX OF THE ESTATE OF DESIREE STEVENSON, A/K/A DESIREE MELISSA-JANE STEVENSON, DECEASED, | : IN THE SUPERIOR COURT OF :      PENNSYLVANIA : : : : |
| v. | : : |
| JAMES G. KANTOR, D.O., AARON N. NEWBERG, M.D., MICHAEL S. CAHAN, M.D., LEE JAFFEE, D.O., DAVID I. MECKLER, M.D.; TRI-COUNTY PEDIATRICS, INC.; ALBERT EINSTEIN MEDICAL CENTER; AND ALBERT EINSTEIN HEALTHCASE NETWORK, | : : : : : : : : : |
| APPEAL OF: JESSE EVANS, APPELLANT | :   No. 222 EDA 2014 |

Appeal from the Order entered November 25, 2013,
Court of Common Pleas, Philadelphia County,
Civil Division at No. October Term, 2010 No. 0302

BEFORE:  DONOHUE, WECHT and PLATT\*, JJ.

MEMORANDUM BY DONOHUE, J.:  **FILED SEPTEMBER 26, 2014**

Jesse Evans ("Evans") appeals from the order of court granting the petition to approve a settlement of a wrongful death and survival action filed by Raquel Stevenson ("Stevenson"), as the administratrix of the estate of Desiree Stevenson ("Decedent").  We affirm.

The trial court aptly summarized the relevant factual and procedural histories of this case as follows:

> The Decedent died on March 9, 2009, at the age of 10, from alleged medical malpractice stemming from the failure of Albert Einstein Medical Center staff to diagnose and treat her viral myocarditis (heart

\*Retired Senior Judge assigned to the Superior Court.

infection). Decedent presented to the hospital with vital signs consistent with a serious heart problem but was left waiting in the emergency room for over an hour after being seen by the attending physician. After being placed on a monitor and having an IV started, lidocaine was ordered but was not administered for another half-hour. After Decedent was finally given the lidocaine, she coded five minutes later and died after attempts at CPR were unsuccessful.

After the lawsuit was filed [Stevenson] filed for bankruptcy. The bankruptcy trustee filed a petition to have Teresa Colleran-Quinn, Esquire, appointed to prosecute the litigation and she obtained a $1.9 [m]illion settlement. … .

***

On April 22, 2013, [Stevenson] … filed a [petition] to [a]pprove [settlement of] a [w]rongful [d]eath and [s]urvival [a]ction naming herself as the only beneficiary of Decedent's estate. [Evans], Decedent's father, [] filed an [a]nswer on May 13, 2013, claiming that he was also a beneficiary of Decedent's estate. After a full evidentiary on August 19, 2013, as well as written briefs submitted by both parties, on November 25, 2013, [the trial court] granted [Stevenson's] [petition] with the allocations she requested. On December 3, 2013, [Evans] filed a [m]otion for [r]econsideration that was denied on December 13, 2013.

Trial Court Opinion, 2/20/14, at 1-2.

This timely appeal follows, in which Evans presents only one issue for our review: "Whether the trial court applied an incorrect legal standard and capriciously disbelieved competent evidence in finding that [Evans], the biological father of [Decedent], was not entitled to share in the proceeds of

the [w]rongful [d]eath settlement in the case of *Stevenson v. Kantor, et al.*?

Appellant's Brief at 8.

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Fuller*, 87 A.3d 330, 333 (Pa. Super. 2014) (citation omitted).

The trial court found that Evans forfeited his right to share in the wrongful death and survival settlement pursuant to section 2106 of the Probate, Estates and Fiduciaries Code. This statute provides, in relevant part, as follows:

> **Parent's share --** Any parent who, for one year or upwards previous to the death of the parent's minor or dependent child, has:
>
> (1)   failed to perform the duty to support the minor or dependent child or who, for one year, has deserted the minor or dependent child;
>
> ***
>
> shall have no right or interest under this chapter in the real or personal estate of the minor or dependent child. The determination under paragraph (1) shall be made by the court after considering the quality,

- 3 -

> nature and extent of the parent's contact with the child and the physical, emotional and financial support provided to the child.

20 Pa.C.S.A. § 2106(b). In order to establish that forfeiture applies based upon a failure to support, the proponent of forfeiture must establish that (1) the decedent was a minor or dependent child; (2) the parent owed a duty of support to the decedent; (3) the parent failed to perform any duty of support for the decedent for at least a year prior to the decedent's death; and (4) the parent's failure was willful. **In re Estate of Moyer**, 758 A.2d 206, 211 (Pa. Super. 2000). "Willful" in this context means that "the parent is aware of the duty to support, has the capacity to perform the duty[,] and makes no attempt to do so." **Id.** at 212.

The parties stipulated to the first two factors, that is; that Decedent was a minor at the time of her death and that as a parent, Evans owed a duty to support her. N.T., 8/19/13, at 3. The trial court found that Father willfully failed to support Decedent for at least one year prior to her death and therefore that he forfeited his right to share in Decedent's estate. Trial Court Opinion, 2/20/14, at 5-7.

Evans divides his argument into four subsections, but the underlying premise of each subsection is the claim that because Stevenson told him Decedent was not his, Evans did not know of his duty to support her and so his failure to support cannot be deemed willful. **See** Appellant's Brief at 15-29.

Evans's arguments cannot succeed because the trial court rejected his testimony that he did not know he was Decedent's father. Trial Court Opinion, 2/20/14, at 6 ("[Evans] gave no compelling reason for believing that he was not Decedent's father."). This was a credibility determination by the trial court, which we are not permitted to disturb. *In re Estate of Fuller*, 87 A.3d at 333.

At the hearing, Father testified that he visited Decedent at Stevenson's home for the first three months of Decedent's life until Stevenson told him that Decedent was not his child. N.T., 8/19/13, at 49. Father took no steps to verify what Stevenson told him through a paternity test, testifying that Stevenson's statement "was enough to [him] that [he] must not be the father." *Id.* Evans claimed that he became aware that Decedent was his daughter when he received a notice, years after Decedent's death, from the lawyer representing Stevenson and Decedent's estate in the malpractice action, indicating that Stevenson named his as the father. *Id.* at 63, 81-82.

In contrast, Stevenson testified that she never made such a statement to Evans; Evans just stopped coming to visit Decedent after the first few months of her life and never made contact with her again. *Id.* at 12. The evidence also establishes that Evans attended Decedent's viewing, as did his parents and brother and sister, who added "uncle" and "aunt" next to their names in the viewing registry. *Id.* at 52, 79-80. Evans's other children also attended the viewing, and Evans testified that they "knew they had a sister."

*Id.* at 81.  Evans's brother testified that his "whole family knew 100 percent that [Decedent] was the niece" and that Evans knew "100 percent" that Decedent was his daughter.  *Id.* at 81.  This evidence, as found credible by the trial court, supports the trial court's determination that Evans knew Decedent was his child.  *See Fid. Nat. Title Ins. Co. of New York v. Suburban W. Abstractors*, 852 A.2d 318, 322 (Pa. Super. 2004) (holding that the finder of fact is entitled to believe all, part, or none of the evidence).  As the trial court's determination is supported by the evidence, we may not disturb it.[1]  *In re Estate of Fuller*, 87 A.3d at 333.

Quite simply, all of Evans's arguments assume the premise that the Evans did not know he was Decedent's father.  *See* Appellant's Brief at 15-32.[2] The trial court rejected Evans's testimony to that effect and found otherwise.  We cannot disturb the trial court's credibility determinations, *In re Estate of Fuller*, 87 A.3d at 333, and so these arguments are unavailing.

Order affirmed.

---

[1] Although Evans does not discuss the remaining to aspects of the "willfull" standard, he admitted that he was employed or receiving disability income during Decedent's life and that did not make any effort to provide support for Decedent in the year preceding her death.  N.T., 8/19/13, at 60, 71-72.

[2] For instance, Evans attempts to analogize or distinguish the facts in his case from prior decisions of this Court.  However, in doing so, Evans builds his discussions on the foundation that he did not believe Decedent was his child. *See* Appellant's Brief at 16-28. As we have discussed, the trial court rejected Evans's testimony to that effect.

J-A25002-14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2014