J-A05016-25                    2025 PA Super 120

| | | |
|---|---|---|
| IN RE: ESTATE OF PATRICIA ANN ROCCO, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: PATRICK J. PASSANANTE | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 716 WDA 2024 |

Appeal from the Order Entered May 30, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 022106963

BEFORE:  OLSON, J., MURRAY, J., and KING, J.

OPINION BY KING, J.:                    **FILED: June 11, 2025**

Appellant, Patrick J. Passanante, appeals from the order entered in the Allegheny County Court of Common Pleas Orphans' Court, which dismissed Appellant's petition for citation sur appeal, petition for citation to trustee and trust beneficiary to void revocable agreement of trust, and petition for rule to vacate probate of the last will and testament of Patricia Ann Rocco ("Decedent").  The order also granted a motion *in limine* filed by Appellee, Joyce A. Posel ("Executrix").  We affirm in part, reverse in part, and remand for further proceedings.

The Orphans' Court set forth the relevant facts of this appeal as follows:

On January 2[6], 2021,[1] Leslie Dutchcot, Esquire, who was
a District Court Magistrate, went to the home of the

---

[1] The Orphans' Court opinion provided the wrong date for the execution of Decedent's will.  It appears that the confusion was due to a misstatement from one of the witnesses at the January 18, 2024 evidentiary hearing.  (***See*** N.T. Hearing, 1/18/24, at 14).

> Decedent and the Executrix for the purpose of having the Decedent execute estate planning documents and to perform a marriage ceremony between the Decedent and the Executrix. Due to concerns about the COVID virus, Attorney Dutchcot, along with Melanie Lewis (who was there as a witness), did not enter the residence. Rather, [Attorney Dutchcot] was on the front porch and Ms. Lewis was on the sidewalk in front of the residence, which was approximately seven (7) feet from the front door. They observed the Decedent execute a Power of Attorney and her Last Will and Testament [("2021 will")]. Ms. Lewis signed the documents as a witness while she was at the residence. Michael Marks, Esquire, executed the documents as a witness; however, it is agreed that he was not present at the time the documents were actually executed.
>
> Attorney Dutchcot, Ms. Lewis, and the Executrix all stated that the Decedent was in good spirits, she did not have any mental limitations, counsel thoroughly explained the documents to the Decedent, the Decedent stated that she understood the documents, and no one assisted the Decedent in executing the documents.

(Orphans' Court Opinion, filed 5/30/24, at 1-2) (record citations omitted).

Decedent died on July 7, 2021. On September 15, 2021, Executrix filed a petition for grant of letters testamentary. The petition included a copy of the 2021 will, which bequeathed Decedent's property "to whoever is Trustee of a certain Revocable Agreement of Trust" that Decedent created on January 26, 2021. (Petition for Grant of Letters, filed 9/15/21, at Attachment).[2] That same day, the register of wills granted letters testamentary to Executrix.

---

[2] The certified record on appeal included inheritance tax forms indicating: "Upon the death of the Decedent, the Trust is to be distributed to [Executrix]. The trust was not funded prior to her death." (Inheritance Tax Return, dated 4/8/22, at Schedule G).

On August 17, 2022, Appellant filed a petition for citation sur appeal and petition for citation to trustee and trust beneficiary to void revocable agreement of trust. In this filing, Appellant explained that he and Decedent "were first cousins and lifelong best friends." (Petition, filed 8/17/22, at ¶4). Despite this close relationship, Appellant claimed that Decedent "never mentioned a romantic relationship with [Executrix]" or the execution of the 2021 will. (*Id.* at ¶21). Appellant believed that Decedent's operative will was a document executed on October 25, 2011 ("2011 will"). Appellant claimed that the 2011 will named Appellant "as one of many beneficiaries and the executor." (*Id.* at ¶76). Thus, Appellant's petition raised counts of undue influence, lack of testamentary capacity, and lack of capacity to execute trust. Appellant concluded that the court should render void the 2021 will and revocable trust agreement. Executrix filed preliminary objections on September 23, 2022. Among other things, Executrix argued that Appellant's petition failed to include sufficient facts to support the claims that Decedent lacked testamentary capacity or was incapable of executing the revocable trust agreement.

On June 5, 2023, Appellant filed a petition for rule to vacate probate of the 2021 will. Appellant argued that the 2021 will "contains a self-proving affidavit that the two subscribing witnesses were present when [Decedent] signed [the 2021] will." (Petition, filed 6/5/23, at ¶7). Appellant insisted, however, that "Michael Marks, one of the supposed witnesses to the [2021]

will, was not present at the time the purported will was executed." (*Id.* at ¶8). Rather, Attorney Marks "signed the [2021] will when he was in his office in Squirrel Hill and not at [Decedent's residence at] 119 Kaplan Avenue despite his signature appearing on the [2021] will that he was present when the [2021] will was signed[.]" (*Id.* at ¶9). Under these circumstances, Appellant posited that Executrix "committed a fraud on the [court] when she signed the petition for grant of letters that the [2021] will was a self-proved will[.]" (*Id.* at ¶14).

Appellant further argued that Decedent did not have the ability to sign her name when she executed the 2021 will. Instead, Decedent "made her mark on the purported will dated January 26, 2021." (*Id.* at ¶19). Appellant maintained that two subscribing witnesses are required for a will signed by mark, pursuant to 20 Pa.C.S.A. § 3132(2), but two witnesses were not present when Decedent made her mark in 2021. For these reasons, Appellant concluded that the court should vacate the probate of the 2021 will.

On August 2, 2023, Executrix filed additional preliminary objections. Executrix noted that there were three (3) witnesses to the execution of the 2021 will: Attorney Dutchcot, Ms. Lewis, and Executrix. "Assuming for the sake of argument only that Decedent's execution of the [2021] will was intended by mark, there were … more than enough witnesses to the signing of the will[.]" (Preliminary Objections, filed 8/2/23, at ¶22). Further, Executrix observed that the 2011 will proffered by Appellant listed six (6)

beneficiaries in addition to Appellant and Executrix. Executrix complained that these six beneficiaries "were not named as parties in the petition and they were not served with or named in the rule or citation." (*Id.* at ¶13). Thus, "[t]o the extent that [Appellant] has standing to challenge the [2021] will, all other beneficiaries of [the 2011] will … are necessary parties to this action." (*Id.* at ¶25).

Ultimately, the court scheduled the matter for a hearing on January 18, 2024. The day before the hearing, Executrix filed a motion *in limine*. Again, Executrix argued that the court "lacks jurisdiction to hear [Appellant's] petition or any evidence as [Appellant] failed to serve any of the … heirs of [Decedent] or any of the other beneficiaries of the [2011 will] he is the proponent of, all of whom are necessary and indispensable parties." (Motion, filed 1/17/24, at ¶16). Despite this argument regarding jurisdiction, the court conducted the hearing as scheduled. The court received testimony from Ms. Lewis, Attorney Dutchcot, Executrix, and Appellant. At the conclusion of the hearing, the court did not rule on any of the pending filings. The parties subsequently submitted proposed findings of fact in April 2024.

On May 30, 2024, the court issued an opinion and order. First, the court found that Decedent's writing on the 2021 will was not a mark, as argued by Appellant. Rather, the 2021 will contained "Decedent's signature as well as she was able to sign it on January 2[6], 2021." (Orphans' Court Opinion at 3). The court also acknowledged that "Attorney Marks was not present when

the [2021] will was signed," and "his signature as a witness is a nullity." (*Id.*)
Nevertheless, the court relied on the testimony from Ms. Lewis, Attorney
Dutchcot, and Executrix, who "were present at the Decedent's home and
observed her actually signing the will." (*Id.*) Thus, the court concluded that
the 2021 will was valid. Regarding Executrix's motion *in limine*, the court
found the additional beneficiaries under the 2011 will were indispensable
parties "whose rights may be impaired, and in fact are impaired, based upon
the within decision." (*Id.* at 4). Accordingly, the court granted Executrix's
motion *in limine*, sustained the preliminary objections in part, overruled all
remaining preliminary objections, and dismissed Appellant's petitions.

Appellant timely filed a notice of appeal on June 14, 2024. On July 1,
2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise
statement of errors complained of on appeal. Appellant timely filed his Rule
1925(b) statement on July 8, 2024.

Appellant now raises three issues for this Court's review, which we have
reordered as follows:

> Whether the trial court erred as a matter of law or abused
> its discretion when it determined that the 2021 will of
> [Decedent] was validly executed and properly witnessed
> pursuant to the applicable Pennsylvania statutes.
>
> Whether the trial court erred as a matter of law or abused
> its discretion when it determined that it was [Decedent's]
> signature to her 2021 will and not a mark made by
> [Decedent].
>
> Whether the trial court erred as a matter of law or abused
> its discretion when it granted the motion *in limine* and

determined that all necessary parties were not made parties and dismissed the petition for citation sur appeal (will contest for lack of testamentary capacity, undue influence, etc.).

(Appellant's Brief at 1).

Our scope and standard of review on appeal from a decree of the Orphans' Court adjudicating an appeal from probate is as follows:

The record is to be reviewed in the light most favorable to appellee, and review is to be limited to determining whether the trial court's findings of fact were based upon legally competent and sufficient evidence and whether there is an error of law or abuse of discretion. Only where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence may the court's findings be set aside.

*Estate of Maddi*, 167 A.3d 818, 822 (Pa.Super. 2017), *appeal denied*, 644 Pa. 655, 178 A.3d 107 (2018) (quoting *In re Estate of Nalaschi*, 90 A.3d 8, 11 (Pa.Super. 2014)). "Because the Orphans' Court sits as the factfinder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." *In re Estate of Fuller*, 87 A.3d 330, 333 (Pa.Super. 2014) (quoting *In re Estate of Hooper*, 80 A.3d 815, 818 (Pa.Super. 2013)).

In his first two issues, Appellant cites 20 Pa.C.S.A. § 3132 for the proposition that "Pennsylvania law requires all wills be proved by the oaths or affirmations of two (2) competent witnesses." (Appellant's Brief at 8). Appellant acknowledges that "[a] will can be proved in several different ways," but Appellant emphasizes that "there must always be two competent

- 7 -

witnesses." (*Id.*)  Appellant observes that the 2021 will appears to be a self-proving will, pursuant to 20 Pa.C.S.A. § 3132.1.  Appellant insists, however, that one of the subscribing witnesses, Attorney Marks, "was not present when [Decedent] signed the 2021 document." (*Id.* at 11).  "Therefore, the self-proving affidavit [attached to the 2021 will] is invalid." (*Id.*)

Appellant also acknowledges that a will may be admitted to probate, without subscribing witnesses, if the testator signs their name at the end of the will.  Under such circumstances, our Supreme Court

> has approved the Oath which is required to be filed by the non-subscribing witnesses.  *See* Register of Wills Form-04 attached hereto as Appendix C.  The Oath requires the non-subscribing witness to be well acquainted with the testator, familiar with the handwriting and signature of the decedent and the signature on the will is that of the testator.

(*Id.* at 9).  Appellant complains that "[t]here are no non-subscribing witnesses who can file an Oath as [Decedent's] 'signature' on the 2021 document is barely legible and does not match [Decedent's] customary signature." (*Id.* at 11).  As such, "[t]he 2021 [will] does not meet the statutory requirements as to execution and is therefore invalid." (*Id.* at 12).

Moreover, Appellant reiterates that the 2021 will does not contain Decedent's normal signature.  "As the 'signature' to the 2021 [will] does not match [Decedent's] usual and customary signature, it is not her signature but a mark." (*Id.* at 16).  Appellant asserts that two subscribing witnesses are required for a will signed by mark, but Appellant reiterates that two subscribing witnesses were not present.  Under these circumstances,

Appellant concludes that the 2021 will must be stricken from probate. We disagree.

The Probate, Estates and Fiduciaries Code governs the form and execution of wills as follows:

**§ 2502. Form and execution of a will**

Every will shall be in writing and shall be signed by the testator at the end thereof, subject to the following rules and exceptions:

**(1) Words following signature.—**The presence of any writing after the signature to a will, whether written before or after its execution, shall not invalidate that which precedes the signature.

**(2) Signature by mark.—**If the testator is unable to sign his name for any reason, a will to which he makes his mark and to which his name is subscribed before or after he makes his mark shall be as valid as though he had signed his name thereto: Provided, That he makes his mark in the presence of two witnesses who sign their names to the will in his presence.

20 Pa.C.S.A. § 2502(1)-(2).

The Code addresses the necessity of witnesses as follows:

**§ 3132. Manner of probate**

All wills shall be proved by the oaths or affirmations of two competent witnesses and

**(1) Will signed by testator.—**In the case of a will to which the testator signed his name, proof by subscribing witnesses, if there are such, shall be preferred to the extent that they are readily available, and proof of the signature of the testator shall be preferred to proof of the signature of a subscribing witness.

**(2) Will signed by mark or by another.—**In the case

of a will signed by mark or by another in behalf of the testator, the proof must be by subscribing witnesses, except to the extent that the register is satisfied that such proof cannot be adduced by the exercise of reasonable diligence. In that event other proof of the execution of the will, including proof of the subscribers' signatures, may be accepted, and proof of the signature of a witness who has subscribed to an attestation clause shall be *prima facie* proof that the facts recited in the attestation clause are true.

20 Pa.C.S.A. § 3132(1)-(2).

Consequently, the Code provides for self-proving wills:

### § 3132.1.  Self-proved wills

**(a)    Proof.—**Unless there is a contest with respect to the validity of the will, or unless the will is signed by mark or by another as provided in section 2502 (relating to form and execution of a will), an affidavit of witness made in conformity with this section shall be accepted by the register as proof of the facts stated as if it had been made under oath before the register at the time of probate.

**(b)    Acknowledgment and affidavits.—**An attested will may at the time of its execution or at any subsequent date be made self-proved by the acknowledgment thereof by the testator and the affidavits of the witnesses, each made before an officer authorized to administer oaths under the laws of this Commonwealth or under the laws of the state where execution occurs, or made before an attorney at law and certified to such an officer as provided in subsection (c) and evidenced, in either case, by the officer's certificate, under official seal, attached or annexed to the will.  A separate affidavit may be used for each witness whose affidavit is not taken at the same time as the testator's acknowledgment.

\*      \*      \*

20 Pa.C.S.A. § 3132.1(a)-(b).

"[I]n the specialized context of probate, the phrase, to 'prove a will,' is

a term of art which broadly addresses the need to verify that the writing in question is, in fact, a valid testamentary instrument." *In re Estate of Wilner*, 636 Pa. 277, 288, 142 A.3d 796, 803 (2016). "The requirement that two witnesses attest to the validity of the testator's signature arises from this broader objective." *Id.*

> We have held that when dealing with a will signed by testator, it is not necessary that there be subscribing witnesses if testator's signature can be proved by two witnesses at probate. Necessarily, such proof does not contemplate an attestation as to testator's mental capacity but **only proof of the fact that the signature affixed to the testamentary instrument is that of the testator.** Such proof verifies the will as one signed by the testator and, at least *prima facie*, establishes a will.

*In re Brantlinger's Estate*, 418 Pa. 236, 244, 210 A.2d 246, 251 (1965) (internal citation omitted) (emphasis added).

Instantly, the court received testimony regarding the circumstances surrounding Decedent's execution of the 2021 will. First, Ms. Lewis testified that she "was standing on the sidewalk in front of [Decedent's] house" at the time of execution. (N.T. Hearing at 15). Ms. Lewis "was there to be a witness to the signing of [Decedent's] powers of attorney, her will, and to witness a marriage ceremony." (*Id.*) Ms. Lewis did not enter Decedent's house "[b]ecause it was during COVID and we did not want to risk infecting anybody, so we were trying to stay about six feet away from everybody." (*Id.*) Ms. Lewis was outside the house with Attorney Dutchcot, while Decedent and Executrix remained inside the house.

From her position on the sidewalk, Ms. Lewis "was still able to see everything that was going on." (*Id.* at 16). Ms. Lewis described Decedent as "excited to move forward with getting married and to sign her documents." (*Id.*) Despite Decedent "using oxygen" and not being "able to stand for long periods," Ms. Lewis testified that Decedent was "[f]riendly, comfortable. She seemed like she was in good spirits." (*Id.* at 16, 17).

After the marriage ceremony, the parties commenced execution of the estate planning documents. Decedent indicated that she understood the documents presented by Attorney Dutchcot. Ms. Lewis testified that Decedent signed the will on her own, with no one moving the pen for her. (*See id.* at 19). On direct examination, Executrix's counsel showed the 2021 will to Ms. Lewis, who confirmed that Decedent signed the document on the date at issue. (*See id.* at 20-21; Executrix's Exhibit A). On cross-examination, Ms. Lewis repeated that she saw Decedent sign the 2021 will from her place on the sidewalk, and the front door to the residence was propped open the entire time that Ms. Lewis was present. Ms. Lewis also estimated that her position on the sidewalk was approximately seven (7) feet away from the front door.

Following Ms. Lewis, Attorney Dutchcot provided her recollection of Decedent's execution of the will. Attorney Dutchcot testified that she had twice spoken with Decedent about the drafting of the estate planning documents, and Decedent "was a willing participant in this event." (*Id.* at 37). Regarding Decedent's ability to provide a signature, the following

exchange occurred on direct examination:

> [COUNSEL:]    And did you see any physical limitations with [Decedent]?
>
> [WITNESS:]    Not—I mean, physical limitations in that she couldn't stand for a long period of time, but not—I had no concerns about her mental capabilities or her ability to hold a pen, which she did do.

(*Id.* at 38).  On the date in question, Attorney Dutchcot witnessed Decedent hold the pen and sign the estate planning documents without any assistance.

Attorney Dutchcot also explained where Decedent and Executrix stood during the marriage ceremony and document execution:

> Well, when we started, for the marriage ceremony, [Decedent] was in front of the door.  My recollection was that there was a storm door between us, and so that in the beginning for the marriage ceremony, [Decedent] was in front of me head-on and [Executrix] would have been just slightly to, my direction, the left of [Decedent] when we did the vows.  And then because we would be passing papers back and forth when we started actually signing documents, [Decedent] was then moved over to the side and [Executrix] and I were handing things back and forth.

(*Id.* at 39-40).  At no point, however, did Attorney Dutchcot lose sight of Decedent.  Just as he did with Ms. Lewis, Executrix's counsel showed the 2021 will to Attorney Dutchcot.  Attorney Dutchcot indicated that she drafted the 2021 will, and Decedent signed pages six (6) and seven (7) of the will in front of her.  (*See id.* at 42-43).

The Orphans' Court found Ms. Lewis and Attorney Dutchcot to be credible.  (*See* Orphans' Court Opinion at 3).  Considering the testimony from these witnesses, the court found that the 2021 will was validly executed.  (*See*

Orphans' Court Opinion at 4). Based upon our review of the record and the applicable law, we cannot say that the court committed an error of law or abused its discretion. **See Estate of Maddi, supra**; **Estate of Fuller, supra**. Although Appellant correctly points out that the 2021 will does not pass muster as a self-proving will under Section 3132.1, this does not prove fatal. Pursuant to Section 2502, the 2021 will was in writing and signed by Decedent at the end thereof. Ms. Lewis and Attorney Dutchcot testified that they watched Decedent place her signature on the 2021 will without any assistance. Thus, the evidence supported the Orphans' Court's conclusion that Decedent did not sign by mark. **See** 20 Pa.C.S.A. § 2502(2). **Compare Matter of Estate of Coniglio**, 472 A.2d 205, 207 (Pa.Super. 1984) (stating that to comply with requirements for signature of will by mark, proponent of will must prove, *inter alia*, inability of testator to sign their name for any reason). Further, Ms. Lewis and Attorney Dutchcot's testimony supplied adequate proof of the fact that the signature affixed to the 2021 will was that of Decedent.[3] **See Brantlinger's Estate, supra**. Accordingly, we conclude that the court

---

[3] We acknowledge Appellant's argument that the signature on the 2021 will was barely legible, it did not match Decedent's customary signature, and the witnesses were not familiar with Decedent's customary signature. We reiterate, however, **the witnesses were present when Decedent signed the 2021 will**, they maintained that Decedent did not require assistance in moving the pen, and they indicated that Decedent willingly signed the document. As the Orphans' Court deemed this testimony credible, it satisfied the statutory requirement that the testator's signature be proven by two witnesses.

properly dismissed Appellant's petition for rule to vacate probate of the 2021 will, which was premised upon the argument that the 2021 will was not properly witnessed.

In his final issue, Appellant argues that the court committed an error of law when it "determined that the beneficiaries of the 2011 will were necessary and indispensable parties." (Appellant's Brief at 13). Appellant insists that Executrix is the only party necessary for the instant action because Executrix "is the only beneficiary under the 2021 [will] who will be aggrieved if the 2021 [will] is stricken from probate." (*Id.*) (footnote omitted). While Appellant acknowledges that the beneficiaries under the 2011 will have standing to contest the 2021 will, Appellant emphasizes that an "individual having standing does not make them a necessary and indispensable party." (*Id.* at 14). Appellant concludes that the court erred in dismissing the petition for citation sur appeal on this basis.[4] We agree.

The following principles govern this Court's review of an order dismissing

---

[4] Although Appellant only mentions the petition for citation sur appeal (*see* Appellant's Brief at 13), we note that the petition for citation sur appeal and petition for citation to trustee and trust beneficiary to void revocable agreement of trust constituted a single filing. (*See* Petition, filed 8/17/22, at 2-14). Moreover, the filing included similar arguments regarding Executrix's purported undue influence and Decedent's capacity to execute both the 2021 will and revocable agreement of trust. Thus, we consider the argument in Appellant's final issue to be applicable to both the petition for citation sur appeal and the petition for citation to trustee and trust beneficiary to void revocable agreement of trust. Nevertheless, in our discussion of this issue, we will refer to the filing simply as the petition for citation sur appeal.

an action due to the failure to join an indispensable party:

> In the absence of an indispensable party, a court lacks jurisdiction over matters before it. A trial court order dismissing an action because a plaintiff fails to join an indispensable party is a final and appealable order, as it puts the parties out of court without reaching the merits of the action.

**Grimme Combustion, Inc. v. Mergentime Corp.**, 595 A.2d 77, (Pa.Super. 1991), *appeal denied*, 530 Pa. 644, 607 A.2d 254 (1992) (internal citations omitted). "It is well-settled that the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*. Our standard of review is *de novo*, and our scope of review is plenary." **In re Estate of Anderson**, 317 A.3d 997, 1004 (Pa.Super. 2024) (quoting **In re Estate of Huber**, 197 A.3d 288, 292 (Pa.Super. 2018)).

"In general, an indispensable party is one whose rights are so connected with the claims of the litigants that no decree can be made without impairing its rights." **In re Navarra**, 185 A.3d 342, 349 (Pa.Super. 2018) (quoting **Sabella v. Appalachian Development Corp.**, 103 A.3d 83, 90 (Pa.Super. 2014)).

> When determining if a party is indispensable to a particular litigation, we consider the following:
>
> > 1. Do absent parties have a right or an interest related to the claim?
> >
> > 2. If so, what is the nature of that right or interest?
> >
> > 3. Is that right or interest essential to the merits of the issue?

- 16 -

4. Can justice be afforded without violating the due process rights of absent parties?

If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation.

***Estate of Anderson, supra*** at 1005 (internal citations and quotation marks omitted).

Instantly, Appellant's petition for citation sur appeal sought redress against Executrix only. Specifically, Appellant requested the following relief:

WHEREFORE, [Appellant] requests that this honorable Court direct a rule to [Executrix], and a Citation to [Executrix], Beneficiary and Trustee of the alleged Revocable Agreement of Trust, to show cause why:

(a) The paper writing dated January 26, 2021 should not be rendered void;

(b) The Revocable Agreement of Trust purportedly of the same date should not be rendered void;

(c) [Executrix] should not produce the purported Revocable Agreement of Trust to [Appellant];

(d) [Executrix] should not be required to obtain separate counsel with respect to her interest as alleged beneficiary under the foregoing documents

(e) [Executrix] should not be prohibited from using estate or trust assets in defense of this Petition.

(Petition, filed 8/17/22, at ¶90). Thus, we agree with Appellant that the beneficiaries of the 2011 will would not suffer prejudice by any decision specific to this petition. ***See Estate of Anderson, supra***. ***See also Navarra, supra*** at 349 (holding deceased legatee was not indispensable

- 17 -

party; each residuary beneficiary held separate share of residuary estate so that one share was not so connected with rights of other legatees).

Our review of the Orphans' Court opinion reveals no discussion of the merits of Appellant's petition for citation sur appeal. First, the Orphans' Court evaluated the arguments set forth in Appellant's petition for rule to vacate probate of the 2021 will, which concerned the number of witnesses. (**See** Orphans' Court Opinion at 2-4). Immediately thereafter, the Orphans' Court evaluated Executrix's motion *in limine*. The court concluded that Appellant should have joined the beneficiaries of the 2011 will, "which would have given them notice of the litigation and an opportunity to be heard, if they so chose." (**Id.** at 4).

Although not expressly stated, we presume that the court's failure to discuss the merits of Appellant's petition for citation sur appeal was due to its disposition of Executrix's motion *in limine*. In light of our conclusion that the beneficiaries of the 2011 will were not indispensable parties, we believe that the court erred in dismissing Appellant's petition for citation sur appeal without reaching the merits. **See Estate of Anderson, supra**; **Grimme, supra**. Consequently, we reverse the portion of the court's order granting Executrix's motion *in limine* and dismissing Appellant's petition for citation sur appeal and petition for citation to trustee and trust beneficiary to void revocable agreement of trust. We affirm the order to the extent that it dismissed Appellant's petition for rule to vacate probate of the 2021 will. We also

remand this case for the limited purpose of additional proceedings necessary for the resolution of Appellant's petition for citation sur appeal and petition for citation to trustee and trust beneficiary to void revocable agreement of trust.

Order affirmed in part, reversed in part, and remanded for further proceedings consistent with this decision. Jurisdiction is relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/11/2025