## In re ESTATE OF Decedent William MOYER.

## Appeal of Judi Betts and Debra Moyer.

Superior Court of Pennsylvania.

Argued April 5, 2000.

Filed Aug. 8, 2000.

Douglas N. Engelman, Williamsport, for appellant.

Gregory A. Stapp, Williamsport, for appellee.

Before STEVENS, MUSMANNO, and LALLY–GREEN, JJ.

LALLY–GREEN, J.:

¶ 1 In this case, Appellant, Judi Betts ("Grandmother"), appeals from the order of the Court of Common Pleas of Lycoming County denying her petition for forfeiture. She had sought to be the beneficiary of death benefits of her deceased grandson whom she had been raising.

¶ 2 The record reveals the following pertinent facts. Debra Moyer ("Mother") is the blood mother of the deceased, Devin William Moyer ("Devin"). Trial Court Opinion at 1. On July 30, 1998, Devin, age four, died in a pedestrian accident. Docket Entry 1. The sole asset of Devin's estate is a potential lawsuit respecting the accident. Trial Court Opinion at 1. Under the intestacy laws, Mother is the sole beneficiary of Devin's estate and, thus, the sole recipient of any money that might be awarded in an action based on the accident unless Mother's right to inherit has been forfeited under 20 Pa.C.S.A. § 2106.

¶ 3 Grandmother is Mother's mother. Grandmother was originally granted Letters of Administration six days after the death of Devin with Mother's consent.[1] Docket Entry 1. Thereafter, following a disagreement with Grandmother, Mother filed a petition for substitution of grant of letters of administration. Docket Entry 2.

¶ 4 Grandmother then filed a petition for forfeiture pursuant to 20 Pa.C.S.A. § 2106. She alleged Mother had failed to perform any duty of support owed to Devin and had, therefore, forfeited any rights to death benefits. Trial Court Opinion at 2. The trial court denied Grandmother's peti-

---

1. The record reflects that Mother originally consented to the grant of letters to Grandmother but changed her mind after the two of them had a disagreement. Trial Court Opinion at 2, n. 2. Mother claimed that because of the state of the relationship, Grandmother would not act in Mother's interest, since Mother was the sole beneficiary of the estate. *Id.*

tion by opinion and order dated August 13, 1999, concluding that it was bound by this Court's ruling *In re Estate of Teaschenko*, 393 Pa.Super. 355, 574 A.2d 649 (1990). Trial Court Opinion at 2–3. Grandmother's motion for post-trial relief was denied. Docket Entry 11. This timely appeal followed.

¶ 5 Grandmother presents the following issue for our review:

A. DID THE LOWER COURT ERR IN NOT RULING IN FAVOR OF FORFEITURE THROUGH ITS INTERPRETATION OF 20 Pa. C.S.A SECTION 2106, AND THE APPLICATION OF THAT STATUTE TO THE FACTS OF THE PRESENT CASE?

Grandmother's Brief at 4. The forfeiture statute provides, in pertinent part:

### § 2106. Forfeiture

**(b) Parent's share.**—Any parent who, for one year or upwards previous to the death of the parent's minor or dependent child, has willfully neglected or failed to perform any duty of support owed to the minor or dependent child or who, for one year, has willfully deserted the minor or dependent child shall have no right or interest under this chapter in the real or personal estate of the minor or dependent child.

20 Pa.C.S.A. § 2106(b). The statute provides no definition for the phrase "any duty of support."

¶ 6 The only published case interpreting this section of the statute is *In re Estate of Teaschenko*, 393 Pa.Super. 355, 574 A.2d 649 (1990). There, a father petitioned to have the mother's right to inherit from a deceased dependent child forfeited because mother failed to support the child. *Id.* at 650–51. The parties, who had been married for ten years and had had three children, divorced in 1979. *Id.* The father retained custody of the children, including the deceased child. *Id.* There was never any formal court order regarding custody or visitation. *Id.*

¶ 7 The following was elicited from father's witnesses in a non-jury trial. The mother was unemployed and, from the time of divorce until after the child's death, she received the minimum public assistance needed to support herself and the one son in her custody, and had no other known source of income. 574 A.2d at 650–51. Mother paid no child support to father and was under no court's order to do so. *Id.* at 651. Mother bought Christmas presents and some clothes for the deceased child. *Id.* Father forbade mother from visiting the children in the home; therefore, mother often parked in front of the father's house to talk to the children. *Id.* The deceased child also regularly visited mother once or twice a week and mother fed him during those visits. *Id.*

¶ 8 The trial court found that the father failed to sustain his burden to prove forfeiture pursuant to 20 Pa.C.S.A. § 2106(b) because he did not show that the mother had the ability to pay support. 574 A.2d at 651. On appeal, this Court affirmed.

¶ 9 We first stated:

The elements of a forfeiture based on failure to support are easily discerned from the plain language of the statute: (1) the decedent must be a minor or dependent child; (2) the parent must owe a duty of support to the decedent; (3) the parent must have failed to perform any duty of support for the decedent for at least a year prior to the decedent's death; and (4) the parent's failure must be willful. The petitioner must produce evidence of all of these elements to make a prima facie case of forfeiture.

*Id.* We then explained:

Two aspects of the statute are noteworthy. First, the parent must have failed to perform "any" duty of support. A parent does not forfeit her interest in her child's estate merely by failing to perform her duties fully; rather, the parent must completely fail to perform *any* duty of support before a court will

find forfeiture under this statute. Second, the parent must have "willfully" failed to perform any duty of support. At the very least, the term "willfully" implies that the parent is aware of the duty to support, has the capacity to perform that duty, and makes no attempt to do so.

*Id.* at 651–52 (emphasis in original).

¶ 10 In *Teaschenko,* we then analyzed the facts of the case:

In the present case, the father has not shown that the mother failed to perform "any" duty of support; nor has he shown that the mother's shortcomings were willful. The father showed only that he was the primary provider; he did not negate the possibility that the mother also provided some support. Testimony provided by the father's own witnesses shows that the mother gave decedent Christmas presents and provided meals and snacks for him and his friends when he visited. These actions constitute some support, albeit minimal. Furthermore, one of the father's witnesses testified that the mother had an extremely limited ability to provide financial support.... This evidence of her inability to pay negated any finding of willfulness.

Even if the father had alleged forfeiture by desertion, we would affirm, as there is clearly no merit to such an allegation. By the father's own testimony, the decedent visited his mother once or twice a week.... The father's witnesses testified that the mother often stopped her car in front of the father's house to see the children ... despite the fact that [she was] prohibited ... from coming into the house....

The father asserts that the mother may have had other sources of income and other means of support. If this is so, then the father had the burden of presenting such evidence. He failed to do so. The court took judicial notice of the inadequacy of the mother's financial means after the father rested his case. The father never requested an opportunity to reopen his case and present further evidence.

Instead the father tried to shift the burden of proof to the mother.... The petitioner has the burden of proof in these matters, and he cannot meet that burden by simply waiting for the respondent to prove his [or her] case.[2]

*Id.* at 652–53.

¶ 11 We turn now to Grandmother's case. First, we set out the findings and conclusions of our esteemed trial court judge respecting Grandmother's case:

These findings are made after closely observing all the witnesses who testified at the hearing. While the court generally found [Grandmother] to be credible, she was obviously embittered, which slightly tainted her testimony on the issue of [Mother's] contributions toward the children's support. Conversely, the court generally found [Mother] to be uncredible, but believed her testimony regarding some minimal contributions she made. Peggy Miller, a friend of [Mother], was a highly credible witness who personally observed [Mother] buy food and clothing for the children and thus helped persuade this court to conclude that [Mother] made the meager contributions which lift her above the forfeiture threshold.

[Mother] lost custody of [Devin] and her two other children in 1996. The children were eventually placed in the custody of [Mother's] mother, [Grandmother]. In the year prior to Decedent's death all three children lived with [Grandmother], who provided the vast majority of their financial support. Occasionally [Grandmother's] other daugh-

---

**2.** The *Teaschenko* court emphasized the petitioner had the burden of proving the parent did not perform any duty of support and that "[t]he father showed only that he was the primary provider" and did "not negate the possibility that the mother also provided some support." *Id.* at 652.

ter, Dori Betts, would give her money to help out. Although [Mother] had been assessed a child support obligation of $290.00 per month, she made no payments from 29 July 1997 through 30 July 1998, nor did she give her mother cash to help with expenses.

[Mother], who was apparently unwilling or unable to establish a residence of her own, drifted here and there, sometimes living with her mother and the children, sometimes living with friends and boyfriends. During the year prior to Decedent's death she lived sporadically at [Grandmother's] house. While she was there she lived off the generosity of [Grandmother]. She occasionally cared for the children when [Grandmother] was unable to do so. Although she did not give [Grandmother] any money to help support the children, she sometimes purchased a few items of food—namely, milk and bread. She also bought the children Christmas presents in 1997.

When [Mother] lived with friends, the children sometimes came to visit her every other weekend. [Grandmother] sent quantities of food along with the children, but [Mother] sometimes purchased additional items of food for them and occasionally bought them a meal at a fast food restaurant. She also bought each of the children an item of clothing at the Family Dollar store on at least one occasion.

Trial Court Opinion, at 3–4.

The trial court concluded:

The testimony at the hearing demonstrated that [Mother] has indeed been an extremely irresponsible parent. She lost custody of her three children to [Grandmother], and never attempted to regain custody. Although she worked at various jobs, she provided very minimal financial support for her children and could not secure and maintain a residence of her own. She flitted from here to there, living with friends or boy-

friends, exhibiting little concern for the welfare of her three small children.

By contrast, [Grandmother] opened her home and her heart to all three children. Despite her own financial problems she fed them, clothed them, and cared for them when her daughter lost custody. She scrimped and saved to provide them with the necessities of life, making do on food stamps and whatever income she could generate from her job.

Surely justice and common sense demand that [Grandmother] should be the one who benefits from [Devin's] estate. Trial Court Opinion at 2. The learned trial court also said:

Unfortunately, the case before this court is very similar to *Teaschenko*, and this court can find no distinctions that make a difference. [Grandmother] herself admitted that [Mother] occasionally bought bread and milk for Decedent. Moreover, it is very difficult to believe [Grandmother's] assertion that when the children visited [Mother] on weekends she provided all the food and [Mother] never bought a morsel. Surely [Mother] provided *some food* for Decedent over the year in question, and on this issue the court accepts the testimony of [Mother], Peggy Miller, and James Miller.

That is not to say that in this court's mind [Mother] deserves to inherit from Decedent's estate. If this court were free to base its decision on fairness and common sense rather than appellate precedent, we would sign a forfeiture order as soon as it could be prepared. We would interpret the statute in the way we think the legislature meant it. The phrase "failed to perform any duty of support" need not be stretched so far as to include any crumb a parent throws in front of a child. Rather, the most logical interpretation is that this phrase directs a trial court to conduct an overall assessment of a parent's performance, in light of his or her unique circumstances

and abilities, to determine whether the parent has adequately performed his or her duties. In making this determination a trial court should consider all of the surrounding circumstances of each case, including whether there exists another individual who has acted as a *de facto* parent and is far more deserving of an inheritance from the child's estate.

*Id.* at 6–7 (emphasis in original).

¶ 12 In summary, the trial court found that, during the relevant year, Mother had failed to pay the court-ordered support to Grandmother or to give Grandmother any money, even though Mother worked a number of jobs and Grandmother had her own financial troubles. The trial court concluded that Mother had provided "some support" as defined by *Teaschenko* because Mother had given Devin Christmas presents, bought some milk and bread for Devin and probably provided some food for Devin, ("[s]urely Ms. Moyer provided *some food* for Decedent over the year in question." *Id.* at 7.) This support, the trial court concluded, was enough to meet the very minimal requirements of the statute under this court's ruling in *Teaschenko.*

¶ 13 Next, we examine the forfeiture statute and the interpretation of it by the *Teaschenko* court and apply it to the facts of Appellant's case. The forfeiture statute states that a parent's right to inherit a child's estate is forfeited where a parent, for at least one year before the death of the minor or dependent child, "has willfully neglected or failed to perform any duty of support owed to the minor or dependent child." 20 Pa.C.S.A. § 2106(b) (emphasis supplied). The *Teaschenko* Court set out four elements of forfeiture based on a failure to support:

**3.** The trial court found that the first two elements had been met and the record supports these findings. *See,* Trial Court Opinion at 5.

**4.** The evidence in *Teaschenko* established that the mother gave the decedent child Christmas presents and provided meals and snacks when he visited her and that "[t]hese actions

(1) the decedent must be a minor or dependent child;

(2) the parent must owe a duty of support to the decedent;

(3) the parent must have failed to perform any duty of support for the decedent for at least a year prior to the decedent's death; and

(4) the parent's failure must be willful.

574 A.2d at 651. The petitioner must produce evidence of all of these elements to make a prima facie case of forfeiture. *Id.*

¶ 14 The trial court's focus in Grandmother's case was on whether the third and fourth elements were met.[3] Thus, we examine whether the record supports the trial court's conclusion that Mother did not fail to perform "any duty of support for the decedent for at least a year prior to the decedent's death."

¶ 15 The first inquiry is what is the proper definition of "duty to support." The *Teaschenko* court stated with respect to the "duty of support" that:

A parent does not forfeit her interest in her child's estate merely by failing to perform her duties fully; rather, the parent must completely fail to perform *any* duty of support before a court will find a forfeiture under this statute.

*Id.* at 651–52.[4] The trial court in Grandmother's case stated:

In evaluating a parent's performance, a court should be able to consider more than how much money the parent contributed to the child's support. A parent's duties involve much more than feeding and clothing a child. A parent also has the responsibility to provide the intangible things that all children need, such as love and emotional support. Perhaps a court might also ask the ques-

constitute some support, albeit minimal." *Teaschenko,* 574 A.2d at 652. The record in *Teaschenko* revealed that the welfare mother provided the best support she could in her circumstances of public assistance, which was the "minimum necessary to support the mother and the son in her custody." *Id.*

tion, "If this child had understood the significance of inheritance, who would he have chosen as his heir?" This court has no doubt that Decedent would have chosen [Grandmother], the woman who voluntarily assumed and diligently performed the duty of parenting him." Trial Court Opinion at 8. It appears that both the *Teaschenko* court and the trial court defined the phrase "duty to support" as equivalent to a duty, whether court ordered or not, to support financially the dependant child in the circumstances of the parent's ability to do so.[5]

¶ 16 Next, assuming that the phrase "duty of support" means a duty to support financially, we are faced in Grandmother's case with a factual situation that differs from that of *Teaschenko*. Here, Mother lost custody of her three children to her mother, Grandmother. Mother was under a court order to provide financial support of the children in the weekly amount of $290. Mother totally failed to comply with the court order to pay support within the relevant year. Trial Court Opinion at 3–4. During that time, Mother gave Grandmother no cash to help with expenses, even though Mother worked at various jobs. *Id.*

¶ 17 Also, we observe that the record reflects that Mother did not make a strong attempt even to see or be with her children. Even though she worked, she did not secure a residence of her own. She drifted, living with friends or boyfriends or with Grandmother. Mother's children visited on some weekends with her when she was with friends and Grandmother sent food along so that the children were fed.

The trial court assumed that Mother also gave the children food when they visited. *Id.* at 7. When Mother stayed with Grandmother, Mother watched the children only when Grandmother could not do so. *Id.* at 4. To the extent that a duty to support includes non-financial support, the record reflects below minimum non-financial support.

¶ 18 In the context of the circumstances of Mother, the record supports a conclusion that Mother failed to provide "any duty to support" during the relevant year. She had a duty to pay child support. She did not. She could have paid child support because she worked. She did not. She could have helped with expenses of the children. She did not. Her minimal actions detailed by the trial court do not amount to support in these circumstances where she was able to, and she failed to, do so within the relevant year.[6]

¶ 19 The fourth inquiry is whether the failure to support is willful. "Willfulness" means that the parent is aware of the duty to support, has the capacity to perform the duty and makes no attempt to do so. *Teaschenko*, 574 A.2d at 652.

¶ 20 Here, the record supports a conclusion that Mother was aware of her duty to support. She was under a court order to do so and she did not. The record supports a conclusion that Mother had the capacity to perform the duty as evidenced by the court order to support, and the evidence that she indeed did work. And, the record supports a conclusion that she made no attempt to meet her court

5. We observe that the *Teaschenko* court weighed the mother's attempts to visit, and actual visits with, the children in its discussion of a potential allegation by father that mother forfeited by desertion. *See, Teaschenko*, 574 A.2d at 652. Thus, *Teaschenko* did not address whether a parent's duty to support involves responsibility to provide "intangible things that all children need, such as love and emotional support." Trial Court Opinion at 8.

6. In *Teaschenko*, Mother did not lose custody of the children. She was under no court order to pay support. The court found that Mother's sole income was a meager sum from welfare, which was the minimum necessary to support Mother and the son in her custody. Mother attempted to see her children when she was not permitted to enter father's house by waiting in a parked car outside the father's home. The children visited Mother every weekend. The Mother fed the children when they visited.

ordered duty to support.[7] Thus, the record reflects that the willfulness requirement has been met. In conclusion, Grandmother has demonstrated that forfeiture is appropriate under the circumstances.

¶ 21 Order reversed.

**7.** Counsel for Mother has argued that the standard for forfeiture should be similar to the standard for termination of parental rights. The trial court did not accept that proposition and stated the following:

> Termination of parental rights involves a living, breathing child whose future is at stake. A court must consider the needs and welfare of the child, among many other factors. In a forfeiture case, however, the child is dead. The only interest at stake is the potential to collect from the estate. Additionally, termination of parental rights strips a parent of one of the most fundamental rights protected by our Constitution. Forfeiture, by contrast, is merely a struggle over money. Therefore, it should be much more difficult to terminate parental rights, while forfeiture should be a sort of "tit for tat" inquiry. Forfeiture should turn on whether the parent's actions during the child's life are sufficient to entitle him or her to benefit from the child's death.

Trial Court Opinion at 7–8. We adopt the trial court's rationale on this issue.