J-S30017-19

2019 PA Super 252

| | | |
|---|---|---|
| JANELLE JOHNSON, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF NAHYER JOHNSON, A MINOR, DECEASED | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| NESHAMINY SHORE PICNIC PARK | : : : : | No. 1914 EDA 2018 |
| APPEAL OF: CARL GRIGGS | : | |

Appeal from the Order Entered, June 4, 2018,
in the Court of Common Pleas of Philadelphia County,
Civil Division at No(s): 170601945.

BEFORE: PANELLA, P.J., KUNSELMAN, J., and MUSMANNO, J.

OPINION BY KUNSELMAN, J.: **Filed: August 20, 2019**

In this tragic wrongful death and survival action, the minor decedent's father, Carl Griggs, appeals from the trial court's decision that he forfeited his share of the proceeds from the action filed by the decedent's mother, Janelle Johnson, under Pennsylvania probate law. *See* 20 Pa.C.S.A. § 2106(b). After careful review, we affirm.

The pertinent factual and procedural history is as follows:

The decedent Nahyer Johnson (Child) was just four years old when he drowned at the Neshaminy Shore Picnic Park during a family get-together. At the time of his death, Child was living with Mother; Father had been incarcerated for the preceding ten months. Father had been largely absent from Child's life. The parents separated before Child's birth, and Father was

not involved at all during the first year of Child's life. In the year preceding Child's death, Father only saw Child once, when Mother brought Child to visit Father in prison. In fact, Child thought his maternal grandfather was his dad.

Following the tragedy, Mother was granted Letters of Administration and she subsequently commenced a wrongful death and survival action on behalf of Child's estate and herself individually. Prior to trial, the parties to that action negotiated a global settlement subject to approval of distributions pursuant to Pa.R.C.P. 2206.

In June 2017, Mother filed a Petition for Forfeiture of Father's share of the wrongful death proceeds arising from Child's death. **See** 20 Pa.C.S.A. § 2106(b)(1). An evidentiary hearing was held on the petition on September 20, 2017. Mother and Father appeared, as did Keith Johnson (the maternal grandfather) and Shontae Sancho, the owner of the Child's daycare. All four testified about the relationship, or the lack thereof, between Father and Child. The court ultimately granted Mother's Petition for Forfeiture in June 2018.

Father presents two issues in this timely-filed appeal:

1. Whether the trial court erred when it misinterpreted the relevant law regarding forfeiture pursuant to 20 Pa.C.S. § 2106(b), by conflating the support and desertion criteria, which requires an intent to permanently abandon, and by interpreting the forfeiture statute to exclude any consideration of noneconomic support.

2. Whether the trial court misapplied the relevant law regarding forfeiture pursuant to 20 Pa.C.S. § 2106(b) by 1) finding that willfulness need not be considered; 2) basing its decision on facts beyond the one year

prior to death; 3) finding forfeiture when there was insufficient proof in the record to show that defendant had the capacity to perform the duty of support; 4) improperly applying **Teaschenko**[1] and **Moyer**[2].

Father's Brief at 2 (footnotes added).

As we discuss below, the crux of this matter is one of first impression. The current version of Section 2106(b) was amended on December 20, 2000 and made effective on February 18, 2001. Father's appeal concerns the dissonance between the current version of the forfeiture statute and our case law applying the prior version. Specifically, Father claims the court erred when it departed from prior case law, which found forfeiture only when the parent **willingly and completely** failed to perform the duty to support the child. Since Father's issues are interconnected, we address them contemporaneously.

This Court recently reaffirmed our standard of review in these matters:

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

---

[1] **In re Estate of Teaschenko**, 574 A.2d 649 (Pa. Super. 1990).

[2] **In re Estate of Moyer**, 758 A.2d 206 (Pa. Super. 2000).

***Estate of Powell***, --- A.3d ---, 2019 PA Super 140, at \*2-3 (Pa. Super. May 1, 2019) (citing ***In re Estate of Fuller***, 87 A.3d 330, 333 (Pa. Super. 2014)) (further citations omitted).

When we review a legal conclusion based on statutory interpretation, our standard of review is *de novo* and our scope of review is plenary. ***See In re Estate of Fuller***, 87 A.3d at 333 (citation omitted).

With those standards in mind, we start by addressing how the forfeiture statute has been amended. Under both the current and former iterations of the forfeiture statute, there are two ways a parent forfeits his or her interest in the child's estate: when the parent failed to support the child; or when the parent deserted the child. ***See*** 20 Pa.C.S.A. § 2106(b)(1).

The current version of Section 2106(b) provides, in relevant part:

> **(b) Parent's share**.—Any parent who, for one year or upwards previous to the death of the parent's minor or dependent child, has:
>
> (1)    failed to perform the duty to support the child or who, for one year, has deserted the minor or dependent child
>
> * * *
>
> shall have no right or interest under this chapter in the real or personal estate of the minor or dependent child. The determination under paragraph (1) shall be made by the court after considering the quality, nature and extent of the parent's contact with the child and the physical, emotional and financial support provided to the child.

20 Pa.C.S.A. § 2106(b).

Prior to its amendment, Section 2106(b) provided:

> Any parent who, for one year or upwards previous to the death of the parent's minor or dependent child, has **willfully neglected** or failed to perform **any** duty of support owed to the minor or dependent child or who, for one year, has **willfully** deserted the minor or dependent child shall have no right or interest under this chapter in the real or personal estate of the minor or dependent child.

Former Section 2106(b) (Effective until February 18, 2001) (emphasis added).

Significantly, the Legislature amended the failure-to-support clause by deleting the term "willfully neglected" and changing the phrase "any duty" to "the duty;" the Legislature amended the desertion clause by deleting the word "willfully" from the phrase "has willfully deserted."

Father asserts that the *prima facie* elements of a forfeiture claim, based on the failure-to-support clause, remain intact notwithstanding the statute's revisions. Interpreting the prior version of the failure-to-support clause, this Court set forth the elements of a *prima facie* claim as follows:

1. the decedent must be a minor or dependent child;

2. the parent must owe a duty of support to the decedent;

3. the parent must have failed to perform **any** duty of support for the decedent for at least a year prior to the decedent's death; and

4. the parent's failure must be **willful**.

**See In re Estate of Moyer**, 758 A.2d 206, 211 (Pa. Super. 2000) (quoting **In re Estate of Teaschenko**, 574 A.2d 649, 651 (Pa. Super. 1990)) (emphasis added).

- 5 -

We further expounded upon the third and fourth elements when we held that a parent must willfully and completely fail to perform the duty of support:

> A parent does not forfeit their interest in their child's estate merely by failing to perform their duties fully; rather, the parent must completely fail to perform *any* duty of support before a court will find a forfeiture under the statute. Second, the parent must have "willfully" failed to perform any duty of support. At the very lead, the term "willfully" implies that the parent is aware of the duty to support, has the capacity to perform that duty, and makes no attempt to do so.

***In re Estate of Teaschenko***, 574 A.2d at 651-652 (emphasis original).

Under this standard, Father argues, we must conclude that the court erred. Father claims that he did not ***willfully*** fail to support Child, because he did not have the capacity to do so given his low income and incarceration; moreover, he argues he did not ***completely*** fail to provide ***any*** support.

Notably, however, our previous construction of these *prima facie* elements focused on the terms "willfully neglected" and "any duty;" and those terms did not survive the amendments to the forfeiture statute. Notwithstanding the amendments, Father argues that willfulness still applies in any analysis of section 2106(b), and that the rule in ***Teaschenko*** and its progeny endures.

Having identified the differences between the two versions of the statute and having framed Father's argument, we address next whether a parent must still ***willfully*** and ***completely*** fail to perform his duty before forfeiture is warranted.

We have discovered no case, published after the current version of the statute became effective (in February 2001), which addresses the willfulness element of a forfeiture claim under the failure-to-support clause.[3] However, we have since interpreted the desertion clause; *i.e.*, the other basis by which a parent forfeits his interest in the child's estate. ***See In re Estate of Fuller***, 87 A.3d 330, 334 (Pa. Super. 2014).

In ***In re Estate of Fuller***, we concluded that the deletion of "willfully" from the desertion clause had no effect on the application of the statute. Father argues that the deletion of "willfully" from the failure-to-support clause is equally benign. We disagree. The clauses are unique.

In ***In re Estate of Fuller***, we observed that words of a statute are generally construed according to their common and approved usage." ***Id.*** (quoting ***Tooey v. AK Steel Corp***., 81 A.3d 851, 858 (Pa. 2013)); ***see also*** 1 Pa.C.S. § 1903. We also turned to the dictionary as a source to determine the common and approved usage of a term. ***Id.*** (citing ***Fogle v. Malvern Courts, Inc.***, 722 A.2d 680, 682 (Pa. 1999)). We then explained that

_____

[3] Father would disagree. He cites ***In re Kistner***, 858 A.2d 1226 (Pa. Super. 2004) for the proposition that that the ***Teaschenko*** elements of a *prima facie* forfeiture care survived the 2001 revisions. But that case concerned the first element of a *prima facie* case, namely, whether the child is a minor or a dependent. In ***In re Kistner***, the decedent-child was 58 years old. As such, the petition for forfeiture did not survive the first element, and we never arrived at the question of whether willfulness remained a *prima facie* element following the 2001 revision, nor whether the failure to support must be complete. Thus, any recitation of the ***Teaschenko*** elements beyond the first element in ***In re Kistner*** was dicta and not binding on this Court.

"desertion" is defined as "the willful and unjustified abandonment of a person's duties or obligations, esp. to military service or to a spouse of family." ***Id.***; ***see also*** Black's Law Dictionary (8th ed. 2004). And finally we held: "By definition…desertion in the context of Section 2106 is a parent's intentional and willful abandonment of a minor or dependent child." ***Id.***

Put another way, desertion comprises two elements: willfulness and abandonment. Only when both elements are present can it be said that parent has deserted their child for purposes of the forfeiture statute. The Legislature's removal of "willfully" in the desertion clause was the elimination of a redundancy.

But the instant matter concerns the other basis for forfeiture: the failure-to-support clause. There, the Legislature's removal of the term "willfully neglected" has a significant impact. Unlike the term "desertion," willfulness is not implied in the plain meaning of the failure-to-support clause.

As in ***In re Estate of Fuller***, we are guided by the Statutory Construction Act, which directs us to ascertain and effectuate the intent of the General Assembly. ***See*** 1 Pa.C.S. §§ 1501 *et seq*.; ***see also*** § 1921(a); ***and see*** § 1903. "Failure" is defined as "an omission of an expected action, occurrence, or performance." Black's Law Dictionary (10th ed. 2014). "Neglect" is defined as "the omission of proper attention to a person or thing, ***whether inadvertent, negligent, or willful***." ***Id.*** (emphasis added).

Further,

'neglect' is not the same thing as 'negligence.' In the present connection the word 'neglect' indicates, as a purely objective fact, that a person has not done that which it was his duty to do; it does not indicate the **reason** for this failure.

*Id.* (quoting J.W. Cecil Turner, **Kenny's Outlines of Criminal Law** 108 n.1 (16th ed. 1952) (emphasis original).

Thus, the failure to perform the duty to support is the mere omission of an expected performance, regardless of the reason. Unlike in the desertion clause, in the failure-to-support clause, the Legislature's removal of the modifier "willfully" fundamentally changed the court's inquiry into the parent's action.

In the current iteration of the statute, where "willfully neglected" has been removed, a parent forfeits his interest when, *inter alia*, he simply "failed to perform the duty to support." The reason for the failure is irrelevant. We cannot say this amendment was unintentional. Not every parent who owes a duty of support to a minor or dependent child has the ability to fulfill his obligation. But when the parent cannot perform his or her duty to support the child, some other actor must, whether that actor is the other parent, another family member, the state, or all of the above. It follows, then, that the Legislature intended to prohibit the non-performing parent from collecting a windfall in the tragic event of the child's death. To rule otherwise would be to ignore Legislature's explicit decision to modify as it did.

Having concluded that a parent's failure to perform the duty of support need not be willful, we must also address how the revised forfeiture statute alters our interpretation of that duty.

In the prior iteration of the statute, a parent would forfeit his interest if he failed to perform **any** duty of support owed. When we interpreted that clause in 1990, we stated:

> A parent does not forfeit her interest in her child's estate merely by failing to perform her duties fully; rather, the parent must completely fail to perform **any** duty of support before a court will find a forfeiture under this statute.

**In re Estate of Teaschenko**, 574 A.2d at 651-652 (emphasis original).

In **In re Estate of Moyer**, 758 A.2d 206, 212 (Pa. Super. 2000), we further examined whether the duty to support meant financial support and/or non-financial support. There, we concluded that regardless of whether the duty to support meant financial or non-financial support, the mother against whom forfeiture was sought wholly failed to provide either.

Seven months later, the Legislature amended Section 2106(b) to change the term "any duty" to "the duty." The Legislature also provided guidance to explain what "the duty" entailed:

> The determination under paragraph (1) [which encompasses both the failure-to-support clause and the desertion clause] shall be made by the court after considering the quality, nature and extent of the parent's contact with the child and the physical, emotional and financial support provided to the child.

20 Pa.C.S.A. § 2106(b).

The revised statute is clear. Section 2106(b) now requires a comprehensive review of the parent's involvement when evaluating that parent's support. We can no longer read the statute to ask whether the parent **completely** failed to support the child.

We also observe that "physical" is defined as "of, relating to, or involving material things; pertaining to real, tangible objects." **See** Black's Law Dictionary (10th ed. 2014). Thus, "physical support" pertains to the material things and objects a parent was able to provide, independent of the financial or emotional support he was obligated to provide.

In sum, we cannot ignore the ramifications of the amendments to the failure-to-support clause. We must conclude that the willfulness element of a *prima facie* forfeiture claim has been eliminated. We conclude further that the duty to support encompasses physical, emotional, and financial support. Therefore, the elements of a *prima facie* forfeiture claim under the current failure-to-support clause are as follows:

1. the decedent must be a minor or dependent child;

2. the parent must owe a duty of support to the decedent; and

3. the parent must have failed to perform the duty of support for the decedent for at least a year prior to the decedent's death

**See** 20 Pa.C.S.A. § 2106(b)

Regarding the third element, the reason why a parent may have failed to support the child is irrelevant. Furthermore, the Legislature mandates the

- 11 -

courts to inquire into **both** the quality, nature and extent of the parent's contact **and** the physical, emotional and financial support provided to the child. **See id.** (emphasis added); **see also In re Estate of Fuller**, 87 A.3d at 334, 336 (concluding that the "quality, nature, and extent of the parent's conduct with the child **and** the physical, emotional and financial support provided to the child" indicated that the parent did not desert the child" (emphasis added)).

Having clarified the inquiry under the failure-to-support clause of a forfeiture claim, we address the trial court's decision and the merits of Father's appeal.

Instantly, the first element was satisfied; Child was four years old, and obviously a minor.

Regarding the second element, Father argues that he had no duty to support the child because of his meager income of $700 per month in social security disability benefits, which were suspended upon his incarceration. Father incorrectly assumes that his social security benefits did not count as income for the purpose of calculating child support. But he argues that even if his benefits counted, he did not have a duty to pay child support because his monthly net income fell below the Self-Support Range. **See** Rule 1910.16-2; 23 Pa.C.S.A. § 4302; **see also** Rule 1910.16-2 (The Self-Support Reserve (SSR) "is intended to assure that obligors with low incomes retain sufficient income to meet their basic needs and to maintain the incentive to continue employment."); **and see** Rule 1910.16-2 Explanatory Comment – 2013 (The

SSR is $931, meaning that the obligor must retain this net amount per month after fulfilling the child support obligation). Thus, Father concludes, because he did not have to pay child support, he did not have a duty of support under the second element of a *prima facie* forfeiture claim.

Father's theory fails twice. First, Father conflates the **duty** to support with the **ability** to support (i.e. ability to perform the duty). As we discussed above, under a forfeiture analysis, the **reason** a parent cannot perform the duty is no longer relevant; that element was stricken with the term "willfully neglected." Although Father's inability to pay child support may have prevented the court from finding him in contempt; an inability to perform a duty is not the same as having no duty at all. For instance, if Father suddenly possessed a winning lottery ticket, then Father would just as suddenly possess the ability to pay the child support, but Father's legal duty was present all along.

Second, Father incorrectly assumes that his incarceration tolled his duty to support the child. Even if incarceration did alleviate him from providing financial support, Father still could have provided some form of emotional or physical support. No doubt, the degree to which he could perform the duty would have been hampered. But the record is nevertheless devoid of allegations that Mother thwarted Father's attempts to have a relationship with Child while incarcerated. Father corresponded with Mother while incarcerated, but he never communicated with Child. Father explains that Mother brought Child to visit him only once during the incarceration. We can infer that this

was enough for Father, who did not petition for more contact, as other prisoners have done. **See, e.g., S.T. v. R.W.**, 192 A.3d 1155, 1159 (Pa. Super. 2018) (Where an incarcerated mother, *pro se*, petitioned for contact via telephone and correspondence). We conclude that the court did not abuse its discretion when determining that Mother satisfied the second element; Father owed a duty of support.

Our consideration of the third and final element involves a determination of the quality, nature and extent of the parental contact, as well as the physical, emotional and financial support Father provided to the child. Instantly, we observe that Father argues that the court did not consider his nonfinancial support. Indeed, the trial court struggled to account for how a parent's nonfinancial support should impact its analysis. Nevertheless, the trial court determined that Father made hardly any effort to support Child, financial or otherwise. We cannot agree with Father that the trial court discounted his nonfinancial support when the trial court made explicit findings that Father made no effort at all. In any event, we observe "it is a well settled doctrine in this Commonwealth that a trial court can be affirmed on any valid basis." **See In re T.P.**, 78 A.3d 1166, 1170 (Pa. Super. 2013).

As we review the trial court's findings, we are mindful of the deference due to lower court, sitting as factfinder, which makes credibility determinations after witnessing the testimony firsthand. **See Estate of Powell**, **supra**, at *2-3.

- 14 -

In a case that turned largely on testimony, the trial court determined Father did virtually nothing. In the year immediately preceding Child's death, Father saw Child only once. While he was incarcerated during 10 of the 12 months leading up to the death, Father made no other effort to have a relationship with Child. In fact, the Father's involvement in Child's life was so extremely limited that Child thought his true father was his maternal grandfather. Although Father had little disposable income, so did Mother. When Mother named Father on her application for public assistance, Father denied paternity and requested testing. Father testified that he did this to be vindictive, because he and Mother had allegedly agreed to handle the support of Child without the court's involvement. During the course of Child's lifetime, Father bought Child one pair of shoes; he never bought Child any food, toys or other gifts. In the three years Child attended daycare, Father provided transportation three times. He never spent holidays with Child or exercised any sort of custody. The sum total of Father's physical, emotional, and financial support was $39.99, and only after Mother's request. We conclude that the trial court did not abuse its discretion in concluding that Father failed to support Child for at least one year prior to Child's death.

Our review of the trial court's decision is not a review of Father's parenting. We are cognizant that the parents discussed the possibility of Father and Child having a meaningful relationship in the future. Tragedy robbed them of that opportunity. Conversely, we are also cognizant that if Father inherited his share, his other child would presumably reap some benefit

from this inheritance.[4]  Yet the statute does not consider what could or should have been, only what was.  In that vein, the trial court did not abuse its discretion when it applied the statute and found Father forfeited his ability to inherit from his deceased minor child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/19

---

[4] Father alluded to the existence of another child support obligation.