J-A09026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF LINDA J. COOK, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: GEORGE M. SCHROECK AND FELICIA R. SCHROECK | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 859 WDA 2024 |

Appeal from the Order Entered July 1, 2024
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
24-21-013525

BEFORE: KUNSELMAN, J., NICHOLS, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.: **FILED: AUGUST 12, 2025**

Appellants George M. Schroeck, Esq. and Felicia R. Schroeck, Esq. appeal from the orphans' court's order removing George Schroeck as executor of the Estate of Linda J. Cook (the Estate) and removing Felicia Schroeck as the attorney for the Estate. Appellants argue that the orphans' court abused its discretion by removing Appellants as executor and counsel for the Estate because the orphans' court failed to consider evidence about the current status of the administration of the Estate, and the evidence did not establish that Appellants were wasting the assets of the Estate. We affirm.

The orphans' court summarized the facts and procedural history of this case as follows:

> The Decedent, Linda J. Cook ("Decedent"), died July 5, 2021. She left a last will and testament executed July 29, 2021 ("Will"). The will was drafted by [Appellant Felicia Schroeck]. It appointed "my attorney, George M. Schroeck, Esq." executor, and "my attorney, Felicia R. Schroeck, Esq." as alternate executor. Letters

testamentary were granted on July 26, 2021. Various inventories and accounts filed in this matter show that the Estate is primarily comprised of one piece of residential real estate, several bank and brokerage accounts, and some stocks. The date of death value of the Estate assets was approximately $4.5 million.

The Will bequeathed $300,000 in trust for the care of Decedent's three cats ("Cat Trust"); made several specific requests to private and charitable interests ranging in the amount from $100 to $60,000 and totaling $410,000, including a $60,000 bequest to [Appellant George Schroeck]; and, bequeathed the residue of the Estate, including the amount remaining in the Cat Trust after the cats died, in equal shares to three entities, one private and two charitable.

The First Account was placed on the orphans' court audit list per local procedure in or about December of 2022. A number of problems/errors were identified on its face by [the] orphans' court auditor, Aryn Smith ("OCA") and brought to [the] orphans' court's attention in or about January of 2023. [Appellant George Schroeck's] pleadings reflect that OCA and/or Erie County Register of Wills were in contact with [Appellant George Schroeck] regarding concerns with the First Account shortly after it was filed.

Upon meeting with [the] OCA, [the] orphans' court identified three areas of concern: (1) whether Estate administration was proceeding in a competent and timely manner; (2) whether fees and costs of administration, including attorney and personal fees, were reasonable and necessary; and (3) whether [Appellant George Schroeck] breached any fiduciary obligation in connection with the Will's gift of $60,000 to [Appellant George Schroeck], considering [Appellant George Schroeck] and the Will's scrivener were, and continue to be, members of the same office, Schroeck & Associates, P.C., and are also related as father and daughter. Given the many charitable beneficiaries included in the will, [the] orphans' court instructed [the] OCA to forward the First Account to the Commonwealth for *parens patriae* review.[1]

---

[1] "The Commonwealth has standing in proceedings that affect a charitable interest." **In re Estate of Davis**, 128 A.3d 819, 820 n.1 (Pa. Super. 2015) (citation omitted). "The responsibility for public supervision traditionally has been delegated to the attorney general to be performed as an exercise of

*(Footnote Continued Next Page)*

[The] Commonwealth filed its Objections to First Account in August of 2023. The [Commonwealth] raised five specific objections: [(1)] objection to the form of the account; (2) objection to [Appellants'] fees; (3) objection to fees and costs incurred in connection with residential real estate included in the Estate; (4) objection to a specific bequest of $60,000.00 to [Appellant George Schroeck]; and (5) objection to the form of the Cat Trust. A hearing was scheduled for October 3, 2023. [Appellants] moved for a continuance the day before the hearing for unspecified reasons. The hearing was rescheduled to December 20, 2023. On the eve of the continued hearing, [Appellants] served [their] Amended First Account on [the] orphans' court. Though presented in December of 2023, the Amended First Account covered only the First Account accounting period, ending October 10, 2022. [The] orphans' court elected to continue the rescheduled hearing, and ordered [Appellants] to file a final account no later than February 7, 2024. On February 6, 2024, [Appellants] filed for an extension, averring:

1. This is a complicated Estate involving 4 estates, [Decedent], Charles Cook (her father, who predeceased her), Lillian Cook (her mother, who predeceased her), and Raymond Scheffer (her husband, who predeceased her); as well as a trust for 3 cats.

2. We are not able to do a Second Account by February 7, 2024, bringing all of the records current.

3. There is too much information to organize by the date of February 7, 2024 to [bring] the Estate account up to the current date.

[Mot. to Continue, 2/6/24, ¶¶ 1-3]. By that time, the Estate had been open for two and a half years, and it had been 14 months since the [First] Account was filed identifying all of Decedent's assets with particularity. Yet, Decedent's residence remained unsold; over a million and a half dollars in stock and investment accounts remained unliquidated; and [Appellants] or rather

_____

his[/her] *parens patriae* powers. These are the ancient powers of guardianship over persons under disability and of protectorship of the public interest . . . ." ***In re Pruner's Estate***, 136 A.2d 107, 109 (Pa. 1957) (citations omitted).

- 3 -

Schroeck & Associates, P.C., had billed over $100,000.00 in commissions and attorney fees.

Initially, [the] orphans' court denied [Appellants'] motion for extension. Then on request for reconsideration, [the] court granted a 10 day extension for filing a current account, including documentation supporting attorney fees, executor commissions, and costs of administration incurred to date.

[Appellants] filed [their] Second Account in mid-February, 2024. The Second Account showed Decedent's residence remained unsold (though it was under contract), $1.5 million in stock and investment accounts remained unliquidated, and [Appellants] had charged another $68,000 in commissions and attorney fees.

[The] Commonwealth filed its Objections to Second Account, along with its [petition to remove executor and attorney for the Estate (Removal Petition)], on March 19, 2024. All outstanding matters were scheduled for hearing on May 3, 2024.

On or about April 10, 2024, [Appellants], by newly retained litigation counsel, Timothy D. McNair, Esq., filed another motion for continuance, averring that due to serious allegations in the Removal Petition, and unavailability of litigation counsel, they would need to postpone the hearing. The court denied the continuance. The allegations in the Removal Petition were virtually identical to those in the Commonwealth's prior objections, therefore, the court deemed it disingenuous of litigation counsel to imply that [Appellants were] surprised by the contents of the Removal Petition or needed additional time to prepare a defense. Thereafter, the Commonwealth filed a motion for continuance based on a clerical error in the Attorney General's office that necessitated filing amended objections. Given both sides had now asked for a continuance, the motion was granted and the hearing was scheduled for June 25, 2024.

Thereafter, [on May 21, 2024, Appellants filed their] Supplemental Second Account,[2] which essentially merged the Amended First Account and Second Account, to cover the accounting period from the date of death to February 7, 2024. By then it had been over [two and a half] years since the grant of letters, and [one and a half] years since the First Account was filed. The Supplemental Second [Account] reported that

_____

[2] Captioned as "Supplement to First, Second & Partial Account."

Decedent's real estate was sold, but stocks and investment accounts remained unliquidated, and were now valued over $2 million. [The] Commonwealth filed its Objections to Supplemental Second Account on June 17, 2024. [Appellants filed an answer to the Commonwealth's objections on June 20, 2024].

On June 20, 2024, a mere five days before the thrice rescheduled hearing, [Appellants] filed a petition[] to recuse ("Recusal Petition") and to enforce a settlement purportedly reached between the parties ("Enforcement Petition"). The Enforcement Petition pledged that the parties reached an agreement that would, at least temporarily, avoid the need for hearing, and whereby the Commonwealth would withdraw its Removal Petition.

The case proceeded to a hearing on June 25, 2024. By orders dated July 1, 2024, the court denied [Appellants'] Recusal and Enforcement Petitions, granted [the] Commonwealth's Removal Petition, and appointed a successor personal representative. [The] Commonwealth's objections were held in abeyance pending a final Estate account from the successor personal representative.

Orphans' Ct. Op., 9/11/24, at 2-6 (footnotes and some citations omitted, and some formatting altered).

Appellants filed a timely notice of appeal from the order removing Appellants as executor and counsel for the Estate.[3] Both Appellants and the orphans' court complied with the requirements of Pa.R.A.P. 1925.

On appeal, Appellants raise the following issues:

1. Did the court below abuse its discretion in failing to consider the current status of the administration of the Estate when it

---

[3] Appellants also filed separate appeals from the orders denying the Recusal Petition and the Enforcement Petition, which this Court docketed at 860 WDA 2024 and 861 WDA 2024, respectively. However, on September 27, 2024, Appellants filed a *praecipe* to discontinue their appeal from the order denying the Recusal Petition. *See* Appellants' *Praecipe* to Withdraw Appeal, 860 WDA 2024, 9/27/24. Three days later, Appellants filed a *praecipe* to discontinue their appeal from the order denying the Enforcement Petition. *See* Appellants' *Praecipe* to Withdraw Appeal, 861 WDA 2024, 9/30/24.

found it would be beneficial to incur the additional expense of new counsel and the delay in administration where virtually all of the Estate assets had been reduced to cash and [Appellants were] prepared to distribute the bulk of the Estate to the residual beneficiaries?

2. Whether, in the absence of any dishonesty, self-dealing, or other improper actions, the court below erred in finding that a delay in the sale of Decedent's residential property, by itself, was sufficient to support a finding that [Appellants were] wasting assets of the Estate, thus justifying the removal of the person in whom [Decedent] had placed her full confidence and had exercised her property right to designate who would manage her affairs after her death?

3. Whether there was sufficient evidence to support a finding that the continuance of [Appellants] in office was likely to jeopardize the interests of the Estate where virtually all of the Estate assets had been reduced to cash and the [Appellants were] prepared to make distribution of the bulk of the Estate?

4. Whether the court demonstrated bias and antipathy to [Appellants] as the result of [Appellants'] claim that the court engaged in improper *ex parte* contact with an opposing party relating to the merits of the case after resisting production of the communications?

5. Whether the court failed to consider the agreed stipulation of the parties in making its determination that the [Appellants were] harming the interests of the estate?

Appellants' Brief at 5-6 (some formatting altered).[4]

_____

[4] We note that although Appellants raised five questions in their statement of questions presented, they divided the argument section of their brief into only two sections. The Pennsylvania Rules of Appellate Procedure require that the argument section of the brief "shall be divided into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a). Failure to do so may result in waiver. *See Ramalingam v. Keller Williams Realty Grp., Inc.*, 121 A.3d 1034, 1042 (Pa. Super. 2015). While we do not condone Appellants' failure to comply with the Rules of Appellate Procedure, the defects in Appellants'
*(Footnote Continued Next Page)*

We begin by noting that our standard of review of a decree of the orphans' court is deferential.

When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Hooper*, 80 A.3d 815, 818 (Pa. Super. 2013) (citations omitted and formatting altered).

"The removal of an execut[or] is a matter vested in the sound discretion of the [orphans'] court, and thus we will disturb such a determination only

---

brief do not impede our ability to render meaningful appellate review; therefore, we decline to find waiver on this basis. *See id.*

Further, we note that Appellants include argument in support of their claim that the orphans' court was biased against Appellants and had engaged in *ex parte* communications with the Office of Attorney General (OAG) in the statement of the case portion of their brief. Appellants' Brief at 9-17. Particularly, Appellants assert that the orphans' court "refused to examine or consider any evidence of the then-current state of the Estate, likely because that information would not have fit its predetermined decision to remove Appellant as Executor." *Id.* at 17. These unsupported allegations of judicial bias in Appellants' statement of the case violate the Rules of Appellate Procedure. *See* Pa.R.A.P. 2117(b) (stating that "[t]he statement of the case **shall not contain any argument**. It is the responsibility of appellant to present in the statement of the case a **balanced presentation of the history of the proceedings** and the respective contentions of the parties" (emphases added)).

upon a finding of an abuse of that discretion." *In re Estate of Mumma*, 41

A.3d 41, 49 (Pa. Super. 2012) (citation omitted).

> The admission or exclusion of evidence, . . . is within the sound discretion of the [orphans'] court. . . . [W]e may only reverse upon a showing that the [orphans'] court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Estate of Fabian*, 222 A.3d 1143, 1147 (Pa. Super. 2019) (citations omitted).

It is well-established that "[a]n abuse of discretion occurs when the

court misapplies existing law, makes a manifestly unreasonable judgment, or

rules with partiality, prejudice or ill will." *In re Estate of Tomcik*, 286 A.3d

748, 764 (Pa. Super. 2022) (citations omitted).

Our Supreme Court has stated that "[a]n executor is required to

exercise the same degree of judgment that a reasonable person would

exercise in the management of his own estate. This duty includes the

responsibility to distribute the estate promptly." *In re McCrea's Estate*, 380

A.2d 773, 775-76 (Pa. 1977) (citations omitted).

This Court has further explained:

Section 3182 of Pennsylvania's Probate, Estates and Fiduciaries Code provides that orphans' courts have the "exclusive power to remove a personal representative"[5] when he/she "mismanage[s] the estate . . . or has failed to perform any duty imposed by law" or "when, for any other reasons, the interests of the estate are likely to be jeopardized by his continuance in office." 20 Pa.C.S.

---

[5] Section 102 of the Probate, Estates and Fiduciaries Code defines "personal representative" as "an executor or administrator of any description." 20 Pa.C.S. § 102.

§ 3182(1), (5). Our Supreme Court has recognized, however, that "the removal of a [personal representative] is a drastic remedy, and the need for such action must be clear." *In re White*, 484 A.2d 763, 765 (Pa. 1984). As stated in *White*, consideration of removal under section 3182 "must be viewed in conjunction with the [testatrix's] expressed confidence in the [personal representative], evinced by the [personal representative's] appointment" and "where a [testatrix] appoints a particular [personal representative], removal should only occur when required to protect the [estate] property." *Id.* Finally, ordinarily removal cannot occur unless some fiduciary duty has been violated, and the "mere displeasure of a beneficiary" is not a sufficient reason for removal. *Id.*

*Estate of Mumma*, 41 A.3d at 49-50 (some formatting altered).

In its Rule 1925(a) opinion, the orphans' court thoroughly explained its reasons for removing Appellant George Schroeck as the executor of the Estate and removing Appellant Felicia Schroeck and the attorney for the Estate. *See* Orphans' Ct. Op. at 11-22. The orphans' court also explained that it excluded evidence of Appellants' conduct from after February 7, 2024, which was the end of the accounting period of Appellants' Supplemental Second Account, because it was irrelevant. *See id.* at 21-22.

Following our review of the record, the parties' briefs,[6] the relevant law, and the orphans' court's well-reasoned analysis, we affirm on the basis of the

---

[6] We note that in their appellate brief, Appellants accuse the OAG of acting out of anger towards Appellants and/or their counsel. *See, e.g.*, Appellants' Brief at 16, 26 n.4. Further our review of the record indicates that the orphans' court repeatedly advised Appellants' counsel to respond to Commonwealth's counsel in a civil and professional manner during the June 25, 2024 hearing. *See, e.g.*, N.T., 6/25/24, at 88, 116-17, 128-29. We admonish Appellants' counsel that although this is an adversarial proceeding, the Code of Civility states that attorneys should "treat all participants in the
*(Footnote Continued Next Page)*

orphans' court's opinion. Specifically, we agree with the orphans' court that Appellants failed to perform a duty imposed by law and Appellants continuing in office would likely jeopardize the interests of the Estate. *See id.* at 11-22.[7] Therefore, the orphans' court did not abuse its discretion by removing Appellant George Schroeck as the executor of the Estate and removing Appellant Felicia Schroeck as the attorney for the Estate. *See Estate of Mumma*, 41 A.3d at 49-50. Further, we discern no abuse of discretion in the orphans' court decision to exclude evidence of Appellants' conduct after February 7, 2024, because that evidence was not relevant to the allegations in the Commonwealth's Removal Petition. *See* Orphans' Ct. Op. at 21-22; *see also Estate of Fabian*, 222 A.3d at 1147. Accordingly, we affirm.[8]

      Order affirmed. Jurisdiction relinquished.

_____

legal process in a civil, professional, and courteous manner at all times[]" and "speak and write in a civil and respectful manner in all communications with the court, court personnel, and other lawyers." Code of Civility, Art. II(1)-(2); *see also Commonwealth v. Poplawski*, 852 A.2d 323, 329 n.5 (Pa. Super. 2004).

[7] We note that the orphans' court's opinion contains some typographical errors. On pages 14 and 17 of the orphans' court's opinion, the citations to Appellants' June 20, 2024 answer to the Commonwealth's objections should read "Answer to Objections to Supplemental Second Account." *See* Orphans' Ct. Op. at 14, 17.

[8] The parties are directed to attach a copy of the orphans' court's opinion in the event of further proceedings.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/12/2025